HOUSE OF LLOYD, INC., Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. 76543.

Supreme Court of Missouri,
En Banc.

Sept. 20, 1994.

Matthew J. Verschelden, Paul E. McLaughlin, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

Richard King, Deborah A. Polk, Kansas City, for amicus curiae MRA & AIM.

ROBERTSON, Judge.

In this case we determine whether a taxpayer owes sales and use taxes on its purchases of boxes, styrofoam peanuts, strapping, tape, and labels (the "packing material") with which it packages and protects its merchandise for delivery to the end purchaser. The Administrative Hearing Commission affirmed the decision of the Director of the Department of Revenue that appellant owed the sales and use taxes it previously paid under protest. Appellant filed a petition for review in this Court. We have jurisdiction because this case involves the construction of the revenue laws of this state. Mo. Const. art. V, § 3. The decision of the Administrative Hearing Commission is reversed and the cause is remanded for entry of appropriate orders consistent with this opinion.

## I.

House of Lloyd, Inc., ("Lloyd") sells ninety-five percent of its merchandise, primarily toys and gifts, through a marketing device known as the "party plan." Under the plan, a hostess (or presumably a host) invites a number of her friends to attend a party at her home, the focus of which is merchandise sold by Lloyd. A demonstrator, who is an independent contractor of Lloyd, attends the party and brings a demonstrator kit, which consists of an attractive, reusable display box containing an array of Lloyd's sample products, catalogues, order forms, and packing material. After the demonstration, the guests complete order forms indicating which of Lloyd's products each wishes to purchase and gives those forms to the hostess, who collects the price and sales tax for each individual order. The hostess consolidates the orders and forwards a single order form with full payment, including sales tax, to Lloyd. Upon receipt of the order form, Lloyd ships the merchandise to the hostess. Lloyd protects its products for shipment by surrounding them with styrofoam peanuts in a corrugated cardboard container. The container is sealed with tape prior to shipping. When the hostess receives the box, she bears responsibility for distributing the merchandise ordered by her guests.

Lloyd also sells its products through an "armchair shopper" program. The armchair

shopper program is a direct mail catalogue arrangement by which Lloyd receives orders from and ships merchandise directly to its end consumer. As with the party plan, Lloyd protects its merchandise for shipment with styrofoam peanuts and packs them in corrugated boxes sealed with tape. The end consumer decides whether to make further use of or dispose of the packing material sent with Lloyd's merchandise.

Under Lloyd's policies, a person wishing to become a demonstrator under the party plan must place a $75 deposit plus sales tax with Lloyd to receive a demonstrator kit. If the demonstrator's sales exceed $1,500, the demonstrator "earns the kit." If sales do not reach that level, the demonstrator must either forfeit the deposit and pay an additional $75 plus sales tax to keep the kit or return the kit in saleable condition to Lloyd. Until a demonstrator earns or pays for the kit, Lloyd retains title to it. Lloyd's agreement with the demonstrator clearly states that ownership of the demonstrator kit remains with Lloyd until the demonstrator completes the purchase of the kit, earns it through sales volume, or returns it to Lloyd. It appears from the record, however, that Lloyd intends the eventual sale of every kit. The Administrative Hearing Commission ("Commission") found that Lloyd never refunds sales tax on kit deposits, even when the demonstrator earns the kit or returns it to Lloyd.

Following an audit, the Director determined that Lloyd owed sales and use taxes on the boxes, strapping, peanuts, tape and other shipping and packaging material used in its party plan and armchair shopper programs and in shipments of demonstrator kits. Lloyd paid the taxes under protest. The Director denied the protest. On review, the Commission conducted a hearing, found that Lloyd adds the cost of the packing materials into the price of its merchandise, but nevertheless determined that Lloyd did not "resell" the materials, and thus owed the sales and use taxes assessed by the Director.

## II.

### A.

Missouri has adopted two complementary tax schemes that together are designed to assure that purchases of tangible personal property for valuable consideration by a Missouri purchaser receive identical tax treatment no matter what the geographic location of the seller. The two taxes work together to place both Missouri and out-of-state vendors on equal footing when consumers consider the tax liability that results from a contemplated purchase.

Sales at retail within the State of Missouri are subject to Missouri *sales* tax. § 144.020, RSMo 1986. A "sale at retail" is "any transfer by any person engaged in business ... of the ownership of, or title to, tangible personal property to the purchaser for use or consumption and not for resale in any form ... for valuable consideration." § 144.010.1(8), RSMo 1986. Under Section 144.610.1, RSMo 1986, the "transfer, barter or exchange of the title or ownership of tangible personal property, or the right to use, store or consume the same, for a consideration paid" to Missouri purchasers from out-of-state vendors is subject to the compensating *use* tax. § 144.605(6), RSMo 1986.

The sales tax applies where the tangible personal property purchased is "not [purchased] for resale in any form." § 144.010.1(8), RSMo 1986. The statute means that where property is purchased for resale, the sales tax does not apply. The use tax law applies more broadly, but expressly exempts from taxation purchases of "tangible personal property held by ... retailers ... solely for resale in the regular course of business." § 144.615(6), RSMo 1986.

### B.

From this statutory root, the Court's cases dealing with the taxability of packing material have not always spoken clearly. Packing material cases have presented particularly difficult problems in applying the sales and use tax statutes since both the purchaser and the seller benefit from the arrival of seller's merchandise in unspoiled condition. Yet in most transactions, the seller parts forever with the packing material when it is sent to the purchaser who, for all practical purposes,

owns the packing material when it is received. This tension between a benefit to the seller and ultimate ownership in the purchaser has produced precedents from this Court that erect unnecessary evidentiary hurdles for taxpayers and create some confusion in application by the Director and the Commission.

On three issues, there is no confusion. First, no one disputes that packing material is tangible personal property. Second, sales by taxpayers like Lloyd to end purchasers are sales by retailers or persons engaged in business. Third, *Smith Beverage Co. of Columbia v. Reiss*, 568 S.W.2d 61 (Mo. banc 1978), determined that reusable soft drink bottles were purchased by the bottler solely for resale and were not subject to use tax. To reach that conclusion, the *Smith* court must also have concluded that ownership of the bottle passed to the end purchaser at the time of purchase, even though the end purchaser only placed a deposit on the bottle at the time of purchase.

After *Smith*, the Director and the taxpayer/seller are left to disagree over only two issues in packing material cases—first, in use tax cases, whether the taxpayer uses the material for its own purposes prior to sending it to the end purchaser, and second, whether valuable consideration flows from the end purchaser to the taxpayer for the packing material the taxpayer transfers with its merchandise.

### 1.

As to the first issue, the taxpayer, as here, invariably claims that it does not owe sales or use taxes on its purchases of packing material because it intends to resell the packing material to the end consumer. This intent to resell is sufficient to exclude a transaction from the sales tax under the language of Section 144.010.1(8).

As to the use tax, Lloyd claims that Section 144.605(10), RSMo 1986, resolves the resale issue in its favor as well. That statute defines "use" as: "[T]he exercise of any right or power over tangible personal property incident to the ownership or control of that property, *except that it does not include storage or the sale of the property in the regular course of business.*" We disagree with Lloyd's contention that Section 144.605(10) is dispositive.

Prior decisions of this Court draw a fine line between cases in which the taxpayer holds the property only for resale and cases in which the taxpayer receives a benefit from holding the property prior to or in conjunction with resale. *See R & M Enterprises v. Director of Revenue*, 748 S.W.2d 171, 172 (Mo. banc 1988). ("It makes no difference that [a taxpayer] may assert this privilege [of using tangible personal property] only a very brief time. The privilege of using is the occasion for the [use] taxation.") *R & M Enterprises* stands for the proposition that the definition of "use" in Section 144.605(10) includes situations in which a benefit accrues to the taxpayer prior to or in conjunction with the resale of the property. Under that reasoning, the exclusion Lloyd claims under Section 144.605(10) applies only where the sole benefit to the seller holding the property is the resale of the property. Indeed, the Commission relied on *R & M Enterprises* in this case to affirm to the Director's decision against Lloyd.

The use tax "is designed to complement and to protect the tax imposed upon the occupation of selling at retail ... [within the state of Missouri], and the validity of its exemptions is to be determined in the light of that purpose." *Turner v. Wright*, 11 Ill.2d 161, 142 N.E.2d 84, 89 (1957), *quoted with approval in Southwestern Bell Tel. Co. v. Morris*, 345 S.W.2d 62, 68 (Mo. banc 1961). For the taxes to complement one another, the phrase found in the use tax exemption, "[t]angible personal property held ... solely for resale," § 144.615(6), must carry an identical meaning and application to the sales taxes phrase "tangible personal property ... not for resale in any form." § 144.010.1(8).

If this is so, *R & M Enterprises* must be overruled to the extent it reads the phrase "solely for resale" in the use tax law to vitiate the exemption if the taxpayer receives *any* benefit from holding the property prior to its shipment to the end purchaser. As to packing material cases only, we reject the fine line drawn in *R & M*, and conclude that a taxpayer holds property "solely" for resale

within the meaning of Section 144.615(6) if the taxpayer holds the property for no other telos than resale. The fact that the taxpayer receives some incidental benefit from using the packing material will not defeat the use tax exemption.

■ In this case, Lloyd purchased the packing material to assure both its customers and itself that merchandise would arrive in an unspoiled condition, free from breakage or other damage. The evidence shows that Lloyd's end purpose was the sale of the packing material to its customers. The fact that Lloyd received a benefit by using the packing material to protect its merchandise during shipping is not a use by Lloyd sufficient to defeat the use tax resale exemption provided in Section 144.615(6).

### 2.

The issue of consideration remains. If no consideration flowed from the end purchaser to Lloyd for the packing material, there was no sale to the end purchaser, and Lloyd's initial purchase of the packing material was a taxable event.

In *King v. National Super Markets, Inc.,* 653 S.W.2d 220 (Mo. banc 1983), the Commission heard evidence that National Supermarkets ("National") factored the price of its grocery bags into the cost of the groceries it sold. This evidence provided a sufficient evidentiary predicate to permit the Commission to conclude that consideration flowed from National's customers to National when ownership of the bags changed hands at the checkout stand. This Court affirmed the Commission. "[T]he customers are paying the increased price in exchange for the quantity of bags required to bag their purchase; therefore, transfer of the bags from National to its customers is supported by consideration as required by Section 144.605(5)." *Id.* at 221.

Until *Sipco, Inc. v. Director of Revenue,* 875 S.W.2d 539 (Mo. banc 1994), *National Super Markets* stood for the proposition that a taxpayer could claim an exclusion from the sales tax or an exemption from the use tax only if the taxpayer could show that it specifically factored the cost of packing material into the price of the merchandise sold. *See House of Lloyd, Inc. v. Director of Revenue,* 824 S.W.2d 914 (Mo. banc 1992). (Taxpayer's claim of use tax exemption failed because there was no evidence that it factored the cost of packing material into the price of the merchandise.)

*Sipco,* however, overruled the evidentiary standard adopted in *National Super Markets.* In *Sipco,* the taxpayer purchased dry ice to preserve its pork products from spoilage during shipping. The Court held that Sipco's purchases of dry ice were not subject to use tax, despite Sipco's failure to produce evidence before the Commission that it factored the cost of the dry ice into the cost of the pork it sold. "[O]ne need not be an accountant to understand that the value of the dry ice was factored directly or indirectly into the total consideration paid for the pork." *Sipco,* 875 S.W.2d at 542. Based on this "common knowledge," the Court announced that "[t]o the extent that *National Super Markets* ... impl[ies] that the holder of goods must show a calculated cost specifically factored into the price for resale to take advantage of the resale exemption, [it is] misleading and should no longer be followed." The Court held that purchases of packing materials were exempt from the use tax because purchased by the taxpayer for resale to the end purchaser.

The new standard adopted in *Sipco* proceeds from two concerns of the Court. First, our decisions ought to provide some clear guidance to taxpayers so that they can predict the tax law's application to their activities and plan accordingly. By holding that packing material that becomes the property of the end purchaser is taxed upon sale to that end purchaser, *Sipco* hoped to restore some measure of predictability to application of the sales and use tax laws in packing material cases.

Second, our prior cases invited an increasingly esoteric presentation of evidence before the Commission, requiring the taxpayer to prove by accounting experts what seemed obvious to a person of ordinary intelligence and business acumen. Under *Sipco,* however, such evidence is no longer necessary. If the packing material is sold to the end pur-

chaser, the Director and the Commission must, and this Court will, assume that the cost of the packing material is factored into the price charged the end purchaser, and that the consideration required by Sections 144.010.1(8) and 144.605(7) is present.

■ Under the interpretation of the sales and use tax laws adopted today, Lloyd's purchases of packing material are purchases for resale within the meaning of Sections 144.-010.1(8) and 144.615(6) and thus avoid sales tax and are exempt from use tax. We hold, therefore, that on party plan and armchair shopper sales, Lloyd did not owe sales or use tax on its purchases of packing materials.

We do not reach a different result as to Lloyd's obligation to pay sales and use taxes on its purchase of packing material used in demonstrator kits. The Commission found that Lloyd accepted a "deposit" of $75 plus sales tax before shipping a demonstrator kit to an independent contractor demonstrator. Under Lloyd's policies, the demonstrator can earn the kit with sales exceeding $1,500, purchase the kit for an additional $75 plus sales tax if commissions are insufficient to earn it, or return the kit to Lloyd and receive a return of the deposit if the demonstrator kit is in a "saleable" condition. Each of these options evidences an intent on Lloyd's part ultimately to sell the demonstrator kits.

■ Section 144.605(7) (prior to 1990, Section 144.605(5)) defines a sale, for use tax purposes, to include "conditional sales." Section 144.010.1(7) of the sales tax statute likewise encompasses sales "conditional or otherwise." The deposit arrangement for demonstrator kits is a "conditional sale" within the meaning of Sections 144.605(7) and 144.010.-1(7). It follows that Lloyd's purchases of packing material for the demonstrator kits are purchases for resale under Section 144.-615(6) and exempt from use tax. Similarly, Lloyd's in-state purchases of the same material do not constitute "sales at retail" under Section 144.010.1(8), and are excluded from sales tax.

## C.

On appeal, decisions of the Administrative Hearing Commission are "upheld if autho-

rized by law and supported by competent and substantial evidence upon the whole record." § 621.193, RSMo 1986. The Commission's approval of the Director's assessments cannot stand if it would "create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly." *Id.*

Here, the Court concludes that the legislature did not intend to impose sales and use taxes on packing material held for resale. The Commission's approval of the assessment of such taxes is therefore not authorized by law and must be reversed.

## III.

The decision of the Administrative Hearing Commission is reversed and the cause remanded for entry of appropriate orders consistent with this opinion.

COVINGTON, C.J., HOLSTEIN, THOMAS, PRICE and LIMBAUGH, JJ., and WHITE, Special Judge, concur.

BENTON, J., not sitting.