**RYDER STUDENT TRANSPORTATION SERVICES, INC., Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. 77493.

Supreme Court of Missouri, En Banc.

April 25, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Norman E. Siegel, Asst. Atty. Gen., Jefferson City, for appellant.

Juan D. Keller, John P. Barrie, Carole Lewis Iles, St. Louis, for respondent.

HOLSTEIN, Judge.

The director of revenue (director) appeals a decision by the Administrative Hearing Commission (AHC). Ryder Student Transportation Services, Inc. (Ryder) provides charter bus and shuttle bus services. Those services were held not to involve the sale of "tickets" and not to be subject to sales tax under Chapter 144.[1] The director seeks review of that decision. Review of a decision of the AHC involving the construction of a revenue law falls within the jurisdiction of this Court. *Mo. Const. art. V, § 3.* Affirmed.

## FACTS

■ Ryder's primary business is providing school bus transportation in Missouri. Ryder also charters its buses to individuals and organizations. The charter fee is based on a per hour and per mile rate or a flat rate based on estimated mileage and hours of service. Ryder also provided shuttle services for Maritz, Inc., to transport its employees between a parking lot and work places. The shuttle service fee was based on a fixed daily rate with an additional amount assessed if the buses accrued more than 6,500 miles per month. The contract also permitted Maritz to use the buses for charter services at an hourly rate.

During the audit period of April 1, 1987, through March 31, 1992, the passengers of the chartered and shuttle buses did not receive any ticket or token from Ryder, and Ryder did not require them to present papers or passes to ride the buses. On July 9, 1993, the director assessed Ryder $348,238.06 in sales tax, interest and additions for the audit period based on the charter and shuttle contracts. Ryder successfully challenged the applicability of the tax to those contracts, claiming it was not liable for sales tax because it sold no "tickets" as that word is used in §§ 144.010.1(8)(f) and 144.020.1(7).

■ Each of the three points on appeal is a variation on a theme that the word "ticket" should be broadly construed to include the contracts for charter or shuttle bus service. The director argues (1) that the AHC's construction of the sales tax on tickets statute is contrary to legislative intent and the legislative history relating to §§ 144.010.1(8)(f) and 144.020.1(7), (2) that the contracts here were in the nature of group ticket sales, and (3) that the AHC erred in requiring the transfer of a written token as a prerequisite to a taxable sale.

## I.

Ryder holds a license for charter bus services under § 390.020. Section 144.010.1(8)(f) defines a "sale at retail" to include "[s]ales of tickets by every person operating ... buses ... licensed by the transportation division of the department of economic development of Missouri, engaged in the transportation of persons for hire." Section 144.020.1(7) imposes "[a] tax equivalent to four percent of the amount paid or charged for intrastate tickets by every person operating ... buses ... licensed by the transportation division of the department of economic development of Missouri, engaged in the transportation of persons for hire." The purpose of Chapter 144 is to "impose a tax upon the privilege of engaging in the business, in this state, of selling ... those

[1]. All references to statutes are to RSMo 1994 unless specified otherwise.

services listed in section 144.020." § 144.021.

■ Statutory terms are considered in their plain or ordinary and usual sense. § 1.090. Where the language of a statute is clear and unambiguous, there is no room for construction. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). If the statute imposing a tax is ambiguous, it is read favorably to the taxpayer. *Moore Leasing, Inc. v. Director of Revenue*, 869 S.W.2d 760, 761 (Mo. banc 1994).

The director acknowledges that the word "ticket" is ambiguous but urges that the intent of the legislature in enacting § 144.010.1(8)(f) was to tax the thing really sold, in this case a bus ride, not the ticket. The short response to that argument is that had the legislature intended to impose a sales tax on all charges for bus rides, including charter or shuttle bus service contracts, the legislature was free to use clear language to do so. Instead, it chose to impose a tax only on the sale of tickets. This Court cannot resort to canons of construction to add words to the statute which are not there.

The director also argues that the legislative history of § 144.010.1(8)(f) indicates an intent to impose taxes on charter passenger bus service. The law in effect just prior to 1937 established a sales tax on the "[s]ales of tickets, *fares and services* by every person operating ... buses...." 1935 Mo. Laws 414 (emphasis added). However, in 1937, the legislature removed the emphasized words, imposing a sales tax only on "the amount paid or charged for tickets by every person operating ... busses...." 1937 Mo.Laws 558. The director argues that the legislature's intent in removing the words "fares and services" from the statute was to exclude sales tax on charges for freight. While that is one possibility, it is merely one possibility. It is equally possible that contracts for shuttle or charter bus services where no ticket was issued were not intended to be taxed. The latter construction is consistent with the statutory language. In addition, it is consistent with the general rule previously noted that taxing statutes are to be construed strictly and taxes are not to be assessed unless they are expressly authorized by law.

*St. Louis Country Club v. Administrative Hearing Comm'n of Missouri*, 657 S.W.2d 614, 617 (Mo. banc 1983).

## II.

In her second point, the director argues that the contracts involved here were group ticket sales and were subject to the tax. To hold that the contracts here were either individual or group ticket sales places a substantial strain on the meaning of the word "ticket." The AHC relied on a dictionary definition that a ticket is a "certificate or token showing that a fare or admission fee has been paid." *Merriam Webster's Collegiate Dictionary* 1232 (10th ed.) The relevant definition of "ticket" found elsewhere is "a certificate, evidence, or token of a right (as admission to a place of assembly, of passage in a public conveyance, of debt, or of a chance)." *Webster's Third New International Dictionary* 2389–90 (1981). In the context of tickets for public conveyances, ticket has no well-defined meaning, but commonly refers to the certificate or voucher evidencing that a passenger's fare is paid. *See Logan v. Hannibal & St. Joseph R.R. Co.*, 77 Mo. 663, 666 (1883) and 86 C.J.S. *Ticket* (1954).

In this case, no person or group was issued a certificate or voucher and no passenger was required to possess or display such certificate or voucher as evidence of their right to use the charter or shuttle buses. Put simply, the contracts were neither individual nor group tickets.

## III.

In her third point, the director argues that the AHC required a physical transfer of either a ticket or a token to the passengers as a prerequisite to the taxable sale of a bus ticket. Even if it is true that a ticket may be issued without actually delivering it to a passenger, it is also true that where the contract does not contemplate that a certificate, token or other evidence of a right of passage will ever be issued, the contract is commonly understood not to be a ticket. Because the contracts did not provide for the issuance of some certificate or voucher authorizing the

boarding of the buses, no tickets were issued and no tax is due.

### CONCLUSION

The Court finds none of the errors asserted by the director of revenue. The decision of the AHC is affirmed.

All concur.