LINCOLN INDUSTRIAL,
INC., Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

No. SC 83208.

Supreme Court of Missouri,
En Banc.

June 26, 2001.

Rehearing Denied July 24, 2001.

Edward F. Downey, Jefferson City, John P. Barrie, B. Derek Rose, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Alana M. Barragan–Scott, Asst. Atty. General, Jefferson City, for respondent.

HOLSTEIN, Judge.

Lincoln Industrial, Inc. (Lincoln) appeals from an order of the Administrative Hearing Commission (AHC) denying its claim for a use tax refund based upon purchases Lincoln made from October 1996 through September 1997. Lincoln claims an exemption for replacement machinery and equipment. This Court has jurisdiction of the appeal. *Mo. Const. art. V, sec. 3.* Because this Court finds that the word "machinery," as used in the statute, encompasses at least some of the components at issue, the decision of the AHC is reversed and the cause remanded.

I.

Lincoln operates a factory in St. Louis, Missouri. It manufactures hydraulic pumps and small machines that dispense liquids like lubricants, ink, or glue. Between October 1996 and September 1997, the company purchased replacement items for some of its manufacturing machines because the existing components had broken or worn out. The majority of the purchases were from out-of-state vendors, and Lincoln paid use tax on these items. Lincoln also inadvertently paid use tax on some in-state purchases.

Lincoln sought a use tax refund of $4,954.49, claiming that certain components purchased out-of-state were nontax-able "machinery and equipment." The director of revenue (director) agreed that the company was entitled to a refund of $1,092.86 because some parts were exempt from tax. Lincoln then filed a claim for the remaining refund it claimed due, $3,861.63. On February 23, 1999, the director issued a final decision denying Lincoln's refund claim. The director's position was that the disputed items are parts and not "machinery and equipment" so as to qualify for a use tax exemption. Later, the parties settled with respect to some claims. Lincoln now claims that it is due $2,767.09.

The replacement items for which Lincoln seeks an exemption are varied and highly specialized. The items were used to refurbish eleven different pieces of equipment: a Davenport production machine, a vibrating feed machine, a Hydromat machine, an AccuCut hone machine, a Zagar drill press, a Weber screwdriving machine, a Bracker machine, a computer numeric controlled (CNC) machine, a screw machine, a sander, and a grinder machine.

Some appear to be individual parts, such as belts, hex nuts, set screws, and the like. Others items are not individual parts, instead appearing to be a combination of components that perform a function in the manufacturing process. By illustration, for the Davenport machine Lincoln purchased and replaced components of the "pickoff spindle." The pickoff spindle grasps parts in the manufacturing process and drops them into a tube. A slide, two lever position burrings, and several pin cam levers and hex nuts are all elements of the pickoff spindle, and all were purchased on January 7, 1997. These component parts, even though separately itemized on the invoice, appear to be a functioning unit with multiple parts.

Another example of a replaced component with multiple parts is the control box on the vibrating feed machine. The vibrating feed machine releases parts down a track. The control box regulates the speed of the vibrating feed machine and, thus, the rate at which the parts move down the track to another machine. A photograph of the box was included in the record. The control box has an outer housing, two switches or lights, two dials, and cables or wires that connect the control box to the vibrating machine.

It is unclear from the record whether certain other items are individual parts or a combination of parts that perform a specific function. For example, the item referred to as the "spindle change gears" contains gears that determine the number of RPMs at which the machine will run. Another such example is the poppet valve replaced on a Roper pump, which provides coolant to the Davenport machine. These would seem to be, but may not be, a combination of parts that were replaced.

The AHC did not distinguish between individual parts replaced and combinations of components that perform a function. The AHC concluded that none of these components are "machinery and equipment" entitling Lincoln to an exemption. This appeal followed.

## II.

Section 144.610, RSMo Supp.1996, imposes a use tax for the "privilege of storing, using or consuming [in Missouri] any article of tangible personal property" purchased out-of-state. Section 144.030.2(4), RSMo Supp.1996, applicable during the tax periods at issue (October 1996 through September 1997), provided a sales and use tax exemption for "machinery and equip-

ment ... replacing and used for the same purposes ... as the machinery and equipment, which is purchased for and used directly for manufacturing or fabricating a product which is intended to be sold ultimately for final use or consumption." The director does not dispute that the replaced items at issue are directly used in manufacturing a product that is intended to be sold for final use or consumption.

■ Accordingly, the issue on appeal is whether the items noted above qualify as "machinery and equipment." This question is one of statutory construction, which is strictly a matter of law. *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). This Court's review of the findings of law of the AHC is *de novo*. *Gammaitoni v. Director of Revenue*, 786 S.W.2d 126, 128 (Mo. banc 1990).

### A.

Initially, the Court examines the meaning of the word "machinery," as it is used in sec. 144.030.2(4), RSMo Supp.1996. Lincoln argues vigorously that the plain meaning of "machinery" extends to each and every component it claims as exempt. The company notes that even if some ambiguity exists, courts give statutes a reasonable construction in light of the legislative objective rather than a strained, narrow or absurd construction. *State ex rel. Rowland Group, Inc. v. Koehr*, 831 S.W.2d 930, 931 (Mo. banc 1992). Lincoln argues that absence of the word "parts" from the exemption is of no consequence, and that a later amendment expressly extending the exemption to "parts" was only a clarification.[1]

---

1. The section was amended in 1998 to include machinery "parts." *1998 Mo. Laws 1672,* *S.B. 936.*

The director argues with equal vigor that component parts are not included in the dictionary definition of "machinery." Moreover, the director points out that the word "parts" is not used in subsection (4) of sec. 144.030.2, but is present elsewhere in the same statute. *See sec. 144.030.2(2), RSMo Supp.1996.* The director also argues that any ambiguity in a statute providing a tax exemption is to be strictly construed against the taxpayer. *David Ranken, Jr. Technical Inst. v. Boykins,* 816 S.W.2d 189, 191 (Mo. banc 1991).

The director's position is not entirely consistent with its past letter rulings issued pursuant to section 536.021.10, however. In those, the director has found that such diverse replacement items as a slicer blade, control cables, assemblies and controls, brakes, bushings, filters, bus plugs, motors, pumps, tanks, filters and airflow controllers all qualify for the exemption. At the same time it has found that nuts and bolts, drill bits and filters, and printing blankets were not exempt.

In the more than thirty years that has passed since the term "machinery" found its way into sec. 144.030, no case has undertaken to define the word. But *Concord Publ'g House, Inc. v. Director of Revenue,* 916 S.W.2d 186 (Mo. banc 1996), is instructive. There, on an appeal of the decision of the AHC to this Court, the director did not contest the AHC finding that certain listed computer components were machinery or equipment. *Id.* at 190. The items included a computer CD ROM drive, a floppy disk drive, and keyboard, all of which were found by the AHC to be tax exempt. *Id.* at 195, n. 3. Though the parties cite numerous other cases, none directly resolve the question. *See Noranda Aluminum v. Missouri Dept. of Revenue,* 599 S.W.2d 1 (Mo. banc 1980); *Floyd Charcoal v. Director of Revenue,* 599 S.W.2d 173 (Mo.1980).

■ Courts are instructed by the legislature to take the words in a statute in their plain and ordinary sense. *Sec. 1.090.* The plain meaning of words, as found in the dictionary, will be used unless the legislature provides a different definition. *Asbury v. Lombardi,* 846 S.W.2d 196, 201 (Mo. banc 1993). In this case, the dictionary is helpful, though not conclusive, in narrowing what is meant by the word "machinery." Machinery is defined as: "1: Machines as a functioning unit: as ... the constituent parts of a machine or instrument: works < a fine watch with precise and delicate [machinery]." *Webster's Third New Int'l Dictionary (Unabridged),* 1354 (1981). The director focuses entirely on the "functioning unit" portion of the definition of machinery. Lincoln emphasizes the "constituent part" segment of the same definition.

■ There is some measure of ambiguity in the dictionary definition of machinery. In construing an ambiguous statute, the ultimate guide is the intent of the legislature. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998). In this particular case, the exemption and others were enacted by the legislature to encourage the production of items ultimately subject to sales tax and to encourage the location and expansion of industry in Missouri. *Concord Publ'g,* 916 S.W.2d 186 at 190.

■ But the director correctly points out that where lingering doubt exists as to what was intended, the statutes granting exemptions are to be construed against the taxpayer. *Boykins,* 816 S.W.2d 189 at 191. The fact that the term "parts" was included in concurrently enacted provisions of the same statute creates doubt as to whether mere individual parts may be considered "machinery" simply because they are incorporated into machines. But the

statutes should not be so strictly construed as to avoid the effect of the exemption altogether. *State ex rel. Ozark Lead Co. v. Goldberg,* 610 S.W.2d 954, 957 (Mo. 1981).

The Court concludes that the meaning of "machinery" lies somewhere between two possible extremes advanced by the parties. Giving the strictest possible construction to the definition of "machinery," as the director suggests, would render no purchase of new machinery entitled to exemption under the statute unless the machines and all component parts that function as a unit were purchased new and replaced at the same time. Retaining a single used nut or screw from the replaced machinery would eliminate the exemption. That is wholly inconsistent with a reasonable reading of the exemption and with the legislative purpose. At the other end of the spectrum is the argument advanced by Lincoln, that any individual part, however insignificant, that is placed on a machine is machinery. This is an equally strained construction of the word "machinery."

■ The Court holds that replacement "machinery" includes those items that are combinations of parts that work together as a functioning unit. These components are machinery even though they are subordinate elements of more complex machinery that is part of the "integrated plant." [2] In contrast, "machinery" does not include the replacement of an individual part, even if that part becomes an element of a functioning machine. In common usage "machinery" includes not just a complex machinery, but also simple machinery. Also the dictionary definitions do not distinguish between machinery that is valuable or quite inexpensive. These distinctions, implied by the parties, are irrelevant. The legislature made no distinction

between more or less expensive, or between complex and simple machinery, and neither should the Court.

As previously noted, this is the first time this Court has had occasion to address the question of what constitutes "machinery" as that term is used in sec. 144.030.2(4), RSMo Supp.1996. Because the AHC did not have the benefit of this definition and because the AHC is in a better position to determine whether a particular item is merely a part or a combination of parts, this case is remanded to the AHC for further proceedings consistent with this opinion.

### B.

■ Lincoln also argues that the individual parts are "equipment" and, thus, are exempt under the same statute. This Court has considered that issue. The definition of "equipment," taken from the dictionary, includes fixed assets having a degree of permanence in the business other than land and buildings. *Walsworth Pub. Co. v. Director of Revenue,* 935 S.W.2d 39, 40 (Mo. banc 1996). While not controlling, this Court in *Walsworth* noted that business and accounting practices normally resolve what is and is not equipment. Here, the various items were used repeatedly in the manufacturing process, requiring replacement after periods as short as a few months or as long as several years. But Lincoln did not capitalize the items as equipment on its books by depreciating the items over a number of years. Rather, it expensed the items as deductions from current income. On that basis and because exemptions are construed strictly against the taxpayer, the AHC did not err in finding that the particular items in ques-

---

**2.** For a more thorough discussion of the term "integrated plant," see *Floyd Charcoal Co. v.*

*Director of Revenue,* 599 S.W.2d 173, 177–78 (Mo.1980).

tion were not exempt from taxation as "equipment" under the statute.

### III.

Lincoln's final claim is that it should be allowed to recover use tax it mistakenly paid on certain items purchased from in-state vendors. The record indicates that Lincoln paid no sales tax on these items. Though the director did not brief this point, it appears that before the AHC it was undisputed that Lincoln actually paid use tax on these items. On remand, if Lincoln has properly raised the claim for a refund, then the AHC will have the opportunity to address the issue fully.

The case is remanded for further proceedings consistent with this opinion.

PRICE, C.J., LIMBAUGH, WHITE, WOLFF and BENTON, JJ., and RAHMEYER, Sp. J., concur.

LAURA DENVIR STITH, J., not participating.