SOUTHWESTERN BELL YELLOW
PAGES, INC., Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 84168.

Supreme Court of Missouri,
En Banc.

Dec. 24, 2002.

Rehearing Denied Jan. 28, 2003.

Jeremiah W. (Jay) Nixon, Attorney General, Alana M. Barragan-Scott, Deputy State Solicitor, Jefferson City, for appellant.

Ray Langenberg, Mark W. Eidman, Austin, TX, Dale E. Hartung, St. Louis, for respondent.

WILLIAM RAY PRICE, JR., Judge.

## I.

The Director of Revenue seeks review of the decision of the Administrative Hearing Commission ("AHC") ordering the refund of use tax paid by Southwestern Bell Yellow Pages, Inc. ("Southwestern Bell") on raw yellow paper purchased out-of-state for manufacture of yellow page directories. Southwestern Bell both purchased the raw paper and printed and bound the paper into directories outside Missouri, but distributed the finished yellow page directo-ries within Missouri. The decision is reversed and the case is remanded.

## II.

Southwestern Bell publishes and distributes yellow page telephone directories in areas of the state where Southwestern Bell Telephone Company provides telephone service. Southwestern Bell distributes these yellow page directories free of charge. The main source of revenue from the publication and distribution of the directories is advertising. Missouri businesses pay Southwestern Bell to place advertisements in their yellow pages.

To produce the directories, Southwestern Bell purchased rolls of blank paper stock from various paper mills located outside of Missouri for delivery to a printer also located outside Missouri. Southwestern Bell contracted with the printer to cut, print, and bind the paper into the directories. The printer shipped the directories to a Missouri independent contractor, employed by and under the direction of Southwestern Bell, to distribute the yellow page directories. Southwestern Bell did not pay any state or local sales tax on the paper purchased or the printer charges for these directories.

Southwestern Bell self-assessed and paid Missouri use tax on the paper purchased and printer charges for the directories distributed in Missouri. Southwestern Bell later filed an application for tax refund. The Director of Revenue denied the application. Southwestern Bell appealed the Director's decision to the AHC. At some point prior to review by the AHC, the parties agreed that Southwestern Bell is owed a refund on the use taxes paid on printer charges. The only issue before the AHC was the applicability of the use tax statute to the raw paper.

In the hearing before the AHC, Southwestern Bell claimed that it does not owe use tax on the paper purchased outside the state because the paper was consumed and transformed into the yellow page directories and thus never "used" in Missouri as contemplated by section 144.610, RSMo 2000. Relying on *International Business Machines Corp. v. David*, 408 S.W.2d 833 (Mo. banc 1966), the AHC agreed and determined that Southwestern Bell is owed a refund.

### III.

"This Court has jurisdiction pursuant to Mo. Const. art. V, section 3 and reviews the AHC's interpretation of revenue law de novo." *Southwestern Bell Tel. v. Director of Revenue*, 78 S.W.3d 763, 765 (Mo. banc 2002) (citing *Concord Pub. House, Inc. v. Director of Revenue*, 916 S.W.2d 186, 189 (Mo. banc 1996)). This Court will uphold the AHC's decision if "authorized by law and supported by competent and substantial evidence upon the whole record". Section 621.193, RSMo 2000; *Southwestern Bell Tel. v. Director of Revenue*, 78 S.W.3d at 765 (citations omitted).

### IV.

A court is to consider statutory terms not defined by the legislature in "their plain or ordinary and usual sense". Section 1.090, RSMo 2000; *Ryder Student Transp. Servs., Inc. v. Director of Revenue*, 896 S.W.2d 633, 635 (Mo. banc 1995). A dictionary will provide the plain meaning of words used in a statute. *Lincoln Indus., Inc. v. Director of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001). If some ambiguity persists in the statute after consulting a dictionary, courts derive meaning from the intent of the legislature. *Id.* Courts cannot add words to a statute under the auspice of statutory construction. *Ryder Student Transp.*, 896 S.W.2d at 635.

Section 144.610 states:

A tax is imposed for the privilege of storing, *using or consuming within this state any article of tangible personal property* ... in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020. This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state.

Section 144.610.1, RSMo 2000 (emphasis added). At issue in this case is the meaning of the statutory language "using ... within this state any article of tangible personal property".

This language was analyzed in 1966 in *International Business Machines, Corp. v. David*, 408 S.W.2d 833 (Mo. banc 1966). In that case the Court held that section 144.610 authorizes a use tax only on "the completed article ... that is brought into this state and not the items of raw material that went into its manufacture, which, of course, are greatly changed in form and could not be identified as separate articles." 408 S.W.2d 833, 836. The Court reasoned that raw material manufactured into a completed product outside the state "was never used in this state as such," and, thus, was not subject to use tax. *Id.*

Under the doctrine of *stare decisis,* a decision of this court should not be lightly overruled, particularly where, as here, the opinion has remained unchanged for many years. In those instances, however, where it appears that

an opinion is clearly erroneous and manifestly wrong, the rule to [sic] *stare decisis* is never applied to prevent the repudiation of such a decision.

*Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 546 (Mo. banc 1963) (citation omitted). *See also Crabtree v. Bugby*, 967 S.W.2d 66, 71–72 (Mo. banc 1998); *Bealey v. Smith*, 158 Mo. 515, 59 S.W. 984, 985–86 (1900); *Young v. Downey*, 150 Mo. 317, 51 S.W. 751, 755 (1899). Unfortunately, the holding of *IBM* cannot be reconciled with the language of the statute and that case must be overruled.

Section 144.610.1 does not include any express reference to a "completed" article, nor is such a concept inherent in the meaning of the word "article." The word "article" is defined in Webster's Third New International Dictionary as "one of a class of material things"; "a thing of a particular class or kind as distinct from a thing of another class or kind". Webster's Third New International Dictionary 123 (1981). The American Heritage Dictionary defines "article" as "[a]n individual thing in a class; an item". The American Heritage Dictionary 130 (2d ed.1991).

As early as 1892, the United States Supreme Court interpreted the word "article" for purposes of imposing tariffs.[1] *Junge v. Hedden*, 146 U.S. 233, 13 S.Ct. 88, 36 L.Ed. 953 (1892). The Court noted that "[i]n common usage, 'article' is applied to almost every separate substance or material, whether as a member of a class, or as a particular substance or commodity." *Id.* at 238, 13 S.Ct. 88. For purposes of tariff laws, "the word ['article'] must be taken comprehensively and cannot be restricted to articles put in condition for final

use, but embraces as well things manufactured only in part, or not at all." *Id.* at 239, 13 S.Ct. 88. More recently, when examining the regulatory authority of the United States Consumer Product Safety Commission, the Third Circuit determined that "components incorporated in a residence," such as circuit wiring and wiring systems, are articles subject to regulation by the commission if the components otherwise fit within the statutory definition of regulated items.[2] *Kaiser Alum. & Chem. Corp. v. The United States Consumer Prod. Safety Comm'n*, 574 F.2d 178, 180 (3d Cir.1978). While the concept of separateness and distinctness is inherent in the word, and the "article" must thereby be capable of separate identification, there simply is no support in this term for the element of "completeness" added by the Court in *IBM*. Yellow paper incorporated or manufactured into yellow page directories is an "article" subject to Missouri use tax.

■ There is no question that Southwestern Bell actually used the paper within the state of Missouri. The legislature defines "use" for purposes of the use tax as:

> the exercise of any right or power over tangible personal property incident to the ownership or control of that property, except that it does not include the temporary storage of property in this state for subsequent use outside the state, or the sale of the property in the regular course of business.

Section 144.605(13), RSMo 2000. Southwestern Bell exercised rights over the raw paper, incident to its ownership thereof,

---

1. In *Junge,* the Court examined several specific statutes relating to tariffs.

2. The statute analyzed in *Kaiser* subjected an "article, or component part thereof, produced or distributed ... for the personal use ... or

enjoyment of a consumer in or around a ... household or residence" to regulation by the United States Consumer Product Safety Commission. 15 U.S.C. § 2052(a)(1).

when it fulfilled its advertising contracts with Missouri businesses. Southwestern Bell purchased the raw yellow paper, arranged for the printing and binding of the yellow paper into yellow page directories, transported the directories into Missouri, and distributed the yellow page directories to Missouri residents and businesses. *See Travelhost of Ozark Mountain Country v. Director of Revenue*, 785 S.W.2d 541 (Mo. banc 1990).

### V.

The legislative intent supports this plain language interpretation. The use tax complements the sales tax by creating "equality of taxation" among products purchased within and without the state. *Farm & Home Sav. Ass'n v. Spradling*, 538 S.W.2d 313, 317 (Mo.1976). In imposing a use tax, the legislature sought to "protect Missouri revenue and Missouri sellers against competition from out-of-state sellers by removing any advantage which might be gained by making purchases outside the state, on which no sales tax is collected." *R & M Enters., Inc. v. Director of Revenue*, 748 S.W.2d 171, 172 (Mo. banc 1988).[3] Had Southwestern Bell purchased the raw paper in Missouri, it would have been subject to sales tax. *See* section 144.020, RSMo 2000. The state in which Southwestern Bell purchased the paper, however, did not assess sales tax. Thus, "equality of taxation" mandates that the use tax be applied to the raw paper. The statute as construed by *IBM* allows taxpayers to purchase raw materials out-of-state, manufacture the goods into a completed product outside the state, and then distribute a completed product within the state—all without incurring any taxes. Such a construction encourages taxpayers to use out-of-state sellers and manufacturers, harming Missouri revenue and Missouri sellers.

### VI.

In *Southwestern Bell Telephone v. Director of Revenue*, 78 S.W.3d 763 (Mo. banc 2002), the Court overruled *GTE Automatic Elec. v. Director of Revenue*, 780 S.W.2d 49 (Mo. banc 1989), in the taxpayers' favor, finding that the previous opinion did not conform to the language of the statute nor the intent of the legislature. Here the Court overrules *International Business Machines Corp. v. David*, 408 S.W.2d 833 (Mo. banc 1966), in the Director's favor, for the same reasons.

The decision of the AHC is reversed, and the case is remanded.

WOLFF, BENTON and STITH, JJ., concur.

TEITELMAN, J., dissents in separate opinion filed.

LIMBAUGH, C.J., and WHITE, J., concur in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, J., dissenting.

I respectfully dissent from the majority's decision to overrule the *IBM* case and this Court's longstanding interpretation of section 144.610.1.

For over 35 years, this Court's decision in *IBM* has stood for the proposition that the use tax prescribed by section 144.610 does not apply to any article, whether raw or completed, if it "was never used in the state as such." *IBM*, 408 S.W.2d at 836. During this time, the General Assembly, which is presumed to act with full awareness and complete knowledge of the law,

---

**3.** The specific holding in *R & M Enterprises* was overruled in *House of Lloyd, Inc. v. Director of Revenue*, 884 S.W.2d 271 (Mo. banc 1994), but the legislative intent behind the statute remains the same.

has repeatedly declined to revise section 144.610.1 and has left the *IBM* rule intact.

Because the General Assembly has not amended the statute to overrule the *IBM* case, this Court should presume that it knew of and adopted the *IBM* rule. *State v. Pritchard,* 982 S.W.2d 273, 277 (Mo. banc 1999); *State ex rel. Howard Elec. Co-op. v. Riney,* 490 S.W.2d 1, 9 (Mo.1973); *Duckworth v. U.S. Fidelity & Guaranty Co.,* 452 S.W.2d 280 (Mo.App.1970). Under these circumstances, it is the prerogative of the General Assembly, not this Court, to modify section 144.610.1. This Court should not interject itself into the province of the legislature and interrupt the settled expectations of Missouri taxpayers subject to the use tax.

Additionally, the majority's reliance on *Southwestern Bell Telephone v. Director of Revenue,* 78 S.W.3d 763 (Mo. banc 2002), as authority for expressly overruling existing precedent is misplaced. *Bell* is distinguishable. Unlike today's opinion, the *Bell* opinion did not squarely overrule long-standing, existing precedent. Instead, in *Bell,* this Court simply discarded dicta from an earlier case, *GTE Automatic Elec. v. Dir. of Revenue,* 780 S.W.2d 49 (Mo. banc 1989), in interpreting the term "manufacturing" in another tax statute, section 144.030.2, RSMo Supp.1992. *Bell,* 78 S.W.3d at 767–68. Furthermore, in overruling the dicta, this Court acted within a 3–year window in which the legislature could have responded to that dicta, but here, the window for legislative response was 30 years, a stronger indication of legislative acceptance of this Court's position.[1]

I would affirm the Administrative Hearing Commission's decision ordering the re-

fund of the use tax paid by Southwestern Bell.

---

1. Although decided in 2002, the tax year at issue in *Bell* was 1992. Thus, in interpreting section 144.030.2, this Court was only con-

cerned with the 3–year window spanning our 1989 decision in *GTE* and the 1992 version of the statute.