

# SUPREME COURT OF MISSOURI
## en banc

OFFICE DEPOT, INC.,              )
                                         )
            **Respondent,**           )
                                         )
**vs.**                                          )         **No. SC95029**
                                         )
DIRECTOR OF REVENUE,       )
                                         )
            **Appellant.**             )

**PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE
HEARING COMMISSION
The Honorable Sreenivasa Rao Dandamudi, Commissioner**

*Opinion issued April 5, 2016*

The Director of Revenue seeks review of the Administrative Hearing Commission's decision that Office Depot, Inc., is entitled to a refund of use taxes it paid on catalogs that it printed and mailed outside Missouri to customers in Missouri.  The Commission concluded that Office Depot's activities do not constitute the "use" of the catalogs in Missouri as is required by the use tax statute, section 144.610.1,[1] in that Office Depot does not "exercise … any right or power over tangible personal property incident to the ownership or control of that property …" in Missouri.  *§ 144.605(13).*  Simply mailing a product from another state into Missouri is not the exercise of right or power or control over the property *in Missouri,* which is what the use tax statute requires.  Because Office

---

[1] All statutory citations refer to RSMo 2000 and RSMo Supp. 2013, unless otherwise indicated.

Depot did not "use" the catalogs in Missouri, the Commission was correct in granting it a refund on use tax. The Commission's decision is affirmed.

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Office Depot, Inc., is incorporated in the state of Delaware and headquartered in Florida, but it operates several retail stores in Missouri. In addition to its physical retail locations, Office Depot also sells its products through its website. Office Depot promotes and advertises its products and services to existing and potential customers in Missouri, in part, by the mailing of unsolicited product catalogs. Office Depot contracts with a printer, R.R. Donnelley and Sons Company, to print and mail its catalogs.

Office Depot purchased paper from outside Missouri for use in producing its product catalogs and delivered the paper to R.R. Donnelley's facilities in Illinois and Indiana along with specific addresses indicating where the finished products should be shipped. Once R.R. Donnelley finished printing, it delivered the finished products to the United States Postal Service for shipment. Although R.R. Donnelley has a presence in Missouri, all of the catalogs relevant to this case were printed at locations and delivered to post offices outside Missouri. By the time the materials first entered Missouri, they were already in the hands of the Postal Service, on their way for delivery directly to Office Depot's customers.

Office Depot accrued and paid $83,954.43 in Missouri use tax based on the cost of the printed catalogs – including the cost of paper and the cost of the printing and mailing services – between 2008 and 2010. In 2012, Office Depot filed an application for use tax refund for the full amount it paid in use tax between 2008 and 2010. The Director denied

Office Depot's refund claim in its entirety. Office Depot appealed the Director's decision to the Commission. The Commission reversed, holding that Office Depot is entitled to a full refund of $83,954.43 because use tax may be imposed only if Office Depot used the catalogs in Missouri, but Office Depot did not in that the printing of its catalogs outside Missouri for distribution in Missouri does not involve the "exercise of any right or power over tangible personal property incident to the ownership or control of that property" as required by section 144.605(13). The Director seeks review.

## II. STANDARD OF REVIEW

Because this case involves the construction of a revenue law of the state of Missouri, the Missouri Constitution gives this Court exclusive appellate jurisdiction. *Mo. Const. art. V, § 3*. This Court reviews the Commission's decision *de novo*, and the decision will be "upheld when authorized by law and supported by competent and substantial evidence upon the whole record, if a mandatory procedural safeguard is not violated." *§ 621.193*. "[I]t is well established that the right of the taxing authority to levy a particular tax must be clearly authorized by the statute, and that all such laws are to be construed strictly against such taxing authority." *Cascio v. Beam, 594 S.W.2d 942, 945 (Mo. banc 1980), citing, A.J. Meyer & Co. v. Unemployment Comp. Comm'n, 152 S.W.2d 184, 191 (Mo. 1941)*.

## III. OFFICE DEPOT DID NOT "USE" THE CATALOGS IN MISSOURI

Under section 144.610.1 "[a] tax is imposed for the privilege of storing, using or consuming within [Missouri] any article of tangible personal property." The Director does not argue that Office Depot "stored" or "consumed" any material in Missouri but,

3

rather, that by causing the catalogs it had printed to be delivered to Missouri residents, Office Depot "used" those materials in Missouri and is liable for use tax.

"Use" is defined by section 144.605(13) as "the exercise of any right or power over tangible personal property incident to the ownership or control of that property …." The question then is whether Office Depot exercised a right or privilege of ownership or control over the catalogs at the time they entered Missouri in the United States mail. If so, then it would be using the catalogs in Missouri and so be liable for the use tax. If not, then Office Depot would not owe the use tax on those materials.

This Court already has determined this precise question. It held in *May Dep't. Stores Co. v. Dir. of Revenue, 748 S.W.2d 174, 175 (Mo. banc 1988)*, that placing catalogs in the mail in another state for delivery to Missouri residents is not "use" of the product in Missouri. In that case, May Department Stores contracted with an Illinois printer to print catalogs. May provided the printer with specific Missouri addresses and mailing labels indicating where the finished catalogs would be sent, and after printing the labels the printer deposited the catalogs with the post office for delivery to Missouri addresses. *May, 748 S.W.2d at 174*.

The catalogs were shipped directly to customers so that May did not have possession of the catalogs in Missouri once the catalogs were printed and mailed. *Id. at 175*. May, therefore, sought a refund of the use tax it paid, arguing that it did not "use" the catalogs or materials at any point in Missouri. *Id. at 174*. The Court agreed. It held that May did not "exercise any of the privileges listed in the [use tax statute], and so does not owe a tax levied on those privileges." *Id. at 175*. The Court reasoned that by simply

giving directions that are executed outside of the state of Missouri, May is not storing, using or consuming the catalogs in Missouri. *Id*

There is no legal distinction between this case and *May*. Office Depot contracts with a printer to have catalogs printed in Illinois and Indiana and delivered to post offices in Illinois and Indiana. The Postal Service then delivers them by mail to customers in Missouri. Just like May Department Stores, Office Depot does not have possession of the catalogs – "even for an instant" – in Missouri. *Id. at 175*. By mailing catalogs from Illinois and Indiana to Missouri residents via the Postal Service, Office Depot cannot be said to have exercised any right or power over those materials incident to ownership or control in Missouri.

The Director cites cases from other jurisdictions she says support the argument that because Office Depot benefited from delivery of the catalogs to Missouri customers, and because its labels "controlled" where and how the catalogs would be delivered in Missouri, it should be held to have "used" the catalogs in Missouri. As the Director notes, some other states have held that, under their statutes, the mailing of items from outside the state constitutes "use" of the item in that state. *See, e.g., Comfortably Yours, Inc. v. Div. of Taxation, 12 N.J.Tax 570 (N.J. Tax 1992)*; *Serv. Merchandise Co., Inc. v. Arizona Dept. of Revenue, 937 P.2d 336 (Ariz. App. 1996)*; *J.C. Penney Co., Inc. v. Balka, 577 N.W.2d 283 (Neb. 1998)*.

In *May,* this Court specifically rejected the reasoning and application of these cases, stating that a company "cannot be said to … use … the catalogs in Missouri by giving directions which are executed outside the state." *748 S.W.2d at 175*. *May* found

5

more persuasive other cases holding that printing and mailing advertising materials from out-of-state locations to in-state residents does not qualify as "use" within the state. *See, e.g., Hoffman-LaRoche, Inc. v. Porterfield, 243 N.E.2d 72 (Ohio 1968)*; *Bennett Bros., Inc. v. State Tax Comm'n, 405 N.Y.S.2d 803 (N.Y. App. Div. 1978)*; *District of Columbia v. W. Bell & Co., Inc., 420 A.2d 1208 (D.C. 1980). See also, Sharper Image Corp. v. Dep't of Treasury, 550 N.W.2d 596 (Mich. App. 1996).*

*May* was correct in its holding. The statute itself defines what is meant by the word "use" in the use tax statutes, "the exercise of any right or power over … property incident to the ownership or control of that property …." *§ 144.605(13)*. The statute imposes a tax, and such "statutes relating to taxation are to be *strictly and narrowly construed* against the taxing authority and in favor of the taxpayer." *Goldberg v. Admin. Hearing Comm'n of Missouri, 609 S.W.2d 140, 144 (Mo. banc 1980)* (emphasis added).

The Director instead would have this Court broadly construe the word "use" beyond the concept of "control" set out in the statute, and have it be understood as synonymous with the concept of "effects" or "benefits." The statute does not, however, say that a use tax will be imposed on any product if the taxpayer's conduct *outside* Missouri has an effect on or benefit for the taxpayer *in* Missouri. It requires the *exercise of control* over the product in Missouri. *§§ 144.610.1, 144.605(13).*

Office Depot and its agents last exercised control over the catalogs outside of Missouri when the catalogs were printed, labeled, and delivered to post offices in Illinois and Indiana by Office Depot's printer. The effects of that labeling were to cause the post office to deliver the catalogs to Missouri residents. But simply because Office Depot set

6

events in motion outside Missouri that eventually caused the catalogs to enter Missouri does not mean Office Depot exercised control over the catalogs in Missouri.

Contrary to the Director's argument, *Southwestern Bell Yellow Pages, Inc. v. Dir. of Revenue, 94 S.W.3d 388 (Mo. banc 2002),* is consistent with *May* and fully supports this Court's determination that the catalogs are not subject to use tax. In *Southwestern Bell,* the telephone company purchased paper outside of Missouri and delivered it to a printer outside of Missouri with whom it contracted to print and bind the paper into telephone directories. *94 S.W.3d at 389.* But, unlike the department store in *May*, Southwestern Bell arranged for the printer to ship the directories to an independent contractor in Missouri, "*employed by and under the direction of* Southwestern Bell." *Id.* (Emphasis added). The Missouri-based contractor then delivered the directories directly to Missouri residents. *Id. Southwestern Bell* held that the presence of Southwestern Bell's independent agent in Missouri constituted use of the directories in Missouri, for Southwestern Bell actually exercised control over the directories in Missouri, stating:

> There is no question that Southwestern Bell actually used the paper within the state of Missouri. … Southwestern Bell exercised rights over the raw paper, incident to its ownership thereof, when it fulfilled its advertising contracts with Missouri businesses. Southwestern Bell purchased the raw yellow paper, arranged for the printing and binding of the yellow paper into yellow page directories, *transported the directories into Missouri*, *and distributed the yellow page directories to Missouri residents and businesses*.

*Id. at 391–92* (emphasis added).

*Southwestern Bell* thereby actually supports the argument of Office Depot rather

7

than the argument of the Director.[2] *May* pointed out that a taxpayer does not use a product in Missouri if the products "do not come to rest in Missouri" and "are not in the possession of [the taxpayer] in Missouri, even for an instant, after printing is complete." *May, 748 S.W.2d at 175*. *Southwestern Bell* further made the point that unless the taxpayer actually exercises control over the product in Missouri itself or through an agent, it has not used the product in Missouri. *Southwestern Bell, 94 S.W.3d at 389*. Here, as in *May*, Office Depot's printer delivers the finished catalogs directly to a post office outside Missouri, which then delivers them to Missouri residents. Unlike in *Southwestern Bell*, the catalogs are never in the possession of Office Depot or its agents in Missouri. Therefore, Office Depot cannot be said to have exercised any right or power incident to its ownership or control of the catalogs in Missouri and, so, is not liable for Missouri use tax.

At oral argument, the Director attempted for the first time to show a right to exercise control or ownership over the catalogs by arguing that they would have been returned to Office Depot if they could not be delivered, so Office Depot still was exercising ownership or control over the catalogs. This argument was not raised below. Equally important, it is not supported by the record. Nowhere in the record or the briefs can the Court find mention of what type of mail service was used for the catalogs. It was

---

[2] The Director implies that it was the purchase by Southwestern Bell of the paper outside Missouri that constituted use of the directories in Missouri and that because Office Depot also bought the paper and gave it to the printer to use in printing the catalogs, it too is liable for use tax. This misreads *Southwestern Bell,* which was decided on the basis noted above, not based on who bought what raw materials. In any event, the purchase and use of the raw materials all outside Missouri would not support a claim that the catalogs were used in Missouri, which is what the statute requires.

the Director's burden to show control, as "[t]he director of revenue shall have the burden of proof with respect to any factual issue relevant to ascertaining the liability of a taxpayer …." *§ 136.300.1.* The Director failed to do so. [3]

For the reasons set out in *May,* and the additional reasons just mentioned, this Court reaffirms *May*'s determination that mailing something to Missouri does not constitute "using" the product in Missouri. The Director argues that this result will defeat the purpose of the use tax by giving companies an incentive to hire out-of-state printers to avoid paying taxes. The purpose of the use tax is to tax use of a product in Missouri;

---

[3] The Court, nonetheless, notes that there are at least six types of United States mail: Priority Express, Priority, First-Class, Standard, Periodicals, and Retail Ground. *Classes of Mail, USPS.com, http://pe.usps.com/businessmail101/classes/welcome.htm (last visited Apr. 4, 2016).* No one suggests that the catalogs were or would be delivered by Priority Express, Priority, or First-Class mail. Certainly it would be customary for them to be delivered by Standard, Periodical, or Retail Ground mail, none of which are automatically returned to the sender. Without specific endorsements, not shown to have been made here, undeliverable Standard Mail and Periodicals are considered "dead mail" by the post office and are disposed. *Mailer Services, USPS.com, http://pe.usps.com/text/dmm300/507.htm (last visited Apr. 4, 2016).* While some undeliverable Retail Ground mail can be returned to sender upon non-delivery, a "bound printed matter" – as presumably these catalogs are – is disposed of by the Postal Service. *Id.* Even if Office Depot could have arranged to have non-delivered mail returned, there is nothing in the record suggesting it did so, and section 144.605(13) requires the actual "*exercise* of any right or power … incident to the ownership or control …." And, while Priority Express, Priority, and First-Class mail can be returned to sender if the addressee is not available, it would be unusual to pay for this expensive form of mail for a catalog circular, and in any event the Director has not offered any evidence that Office Depot used these classes of mail. This Court's own review of postal regulations also shows that the post office offers a service known as "Package Intercept" through which customers can redirect mail that has not yet been delivered. Again, this service is only available on certain types of mail and there is no evidence that Office Depot mailed its catalogs by Priority Express, Priority, or First-Class, as opposed to by the two most common types of mail, Standard and Periodicals. *USPS Package Intercept, USPS.com, https://www.usps.com/manage/package-intercept.htm (last visited Apr. 4, 2016).* Finally, there is no suggestion that Office Depot tried to interfere with the delivery of its catalogs before they were delivered, which would have made their mailing rather pointless.

9

however, and it cannot defeat that purpose for this Court to decline to impose a tax on conduct that does not constitute use of a product in Missouri. In any event, as noted in *May*, such policy arguments are for the legislature, not for this Court. *See May, 748 S.W.2d at 175*. This Court looks at the language of the statute and determines whether the Director has "point[ed] to a statutory incident which causes the tax to attach." *Id*. The Director has not done so here. Under the use tax statute, Office Depot has not exercised any right or power incident to ownership or control of the catalogs in Missouri. *§§ 144.610.1, 144.605(13)*.

## IV. CONCLUSION

By delivering the catalogs to a post office outside of Missouri for shipment to Missouri residents via the Postal Service, Office Depot did not exercise any right or power incident to ownership or control over the catalogs in Missouri; therefore, it did not "use" them in Missouri. As a result, the Commission was correct in determining that Office Depot was entitled to a refund of use tax under section 144.610.1. The Commission's decision is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

All concur.