**KANSAS CITY POWER AND LIGHT COMPANY, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. SC 84117.**

Supreme Court of Missouri,
En Banc.

July 23, 2002.

As Modified on Denial of Rehearing
Aug. 27, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mark A. Long, Asst. Atty. Gen., Jefferson City, for Appellant.

Richard E. Lenza, Scott E. Vincent, Kansas City, for Respondent.

LAURA DENVIR STITH, Judge.

Kansas City Power and Light Company ("KCP & L") is an electric utility company selling electricity to residential and commercial customers, including the Hyatt Re-

gency Crown Center Hotel in Kansas City, Missouri ("Hyatt"). KCP & L collected and remitted $89,075.03 in Missouri sales tax from September 1, 1995 to August 31, 1998 on its sales of electricity to Hyatt. KCP & L sought a refund of the proportion of this tax applicable to the electricity used by Hyatt to heat, cool and provide power to *customer space*, that is, in Hyatt's hotel rooms and meeting and banquet facilities. It did not seek a refund on those portions of the electricity it apportioned to non-customer space, such as Hyatt offices, kitchens, restaurants and lobbies. The Director denied the refund.

KCP & L appealed the denial to the Administrative Hearing Commission ("AHC"). The AHC found that KCP & L was entitled to a refund of the $41,589.14 portion of the sales tax that it paid on electricity it provided to customer space, but not of the remainder of the sales tax, which was attributable to electricity provided to vacant hotel rooms and non-customer space. The Director appeals. We affirm the AHC's decision.

## I. ELECTRICITY CAN BE SOLD AT RETAIL

The key issue before the AHC was whether KCP & L's sales of electricity to Hyatt for use in its customer space were taxable as "sales at retail" of electricity by KCP & L to Hyatt. Clearly, under Missouri statutes, sales of electricity are subject to tax. Section 144.020.1(3) states:

A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:

. . . .

(3) A tax equivalent to four percent of the basic rate paid or charged on *all sales of electricity or electrical current,* water and gas, natural or artificial, to domestic, commercial or industrial consumers;

Sec. 144.020.1(3) RSMo 2000 (emphasis added).[1] Missouri statutes also make clear that sales of electricity can qualify as sales at retail even though electricity is not tangible personal property, stating:

Where necessary to conform to the context of sections 144.010 to 144.525 and the tax imposed thereby, *the term "sale at retail"* shall be construed to embrace:

. . . .

(b) *Sales of electricity,* electrical current, water and gas, natural or artificial, to domestic, commercial or industrial consumers;

Sec. 144.010.1(10)(b) (emphasis added).

Thus, the real question in determining whether KCP & L's sales to Hyatt are subject to tax is whether the sales are sales "at retail." A "sale at retail" is defined as:

any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, *for use or consumption and not for resale* in any form as tangible personal property, for a valuable consideration. . . .

Sec. 144.010.1(10) (emphasis added). Accordingly, under section 144.010.1(10), only transfers of property for use or consumption by the buyer, and *not for resale,* constitute "sales at retail." A "sale" is also defined by Missouri statutes. It is:

any transfer, barter or exchange of *the title or ownership of tangible personal property, or the right to use, store or consume the same,* for a consideration paid or to be paid . . .

---

**1.** Unless otherwise noted, all references are to Revised Statutes of Missouri, 2000.

Sec. 144.605.7 (emphasis added).

■ In other words, if a person purchases a tangible or intangible product in order to sell it to another, the purchase is not subject to sales tax. As this Court explained the rule in *Westwood Country Club v. Director of Revenue*, 6 S.W.3d 885 (Mo. banc 1999), "[t]he sale for resale exclusion is derived from the text of the statutory definition of 'sale at retail' . . . A 'sale at retail,' which is by this definition a sale 'not for resale,' is subject to tax under section 144.020.1 . . ., and by implication, a sale for resale is excluded from tax." *Id.* at 889–90. This means that, "[t]o determine whether there has been a resale, a court must find that there has been (1) a transfer, barter, or exchange (2) of the title or ownership of tangible personal property or the right to use, store, or consume the same (3) for consideration paid." *Kansas City Royals Baseball Corp. v. Director of Revenue*, 32 S.W.3d 560, 562 (Mo. banc 2000), *citing*, Sec. 144.605(7), RSMo 1994; *Aladdin's Castle, Inc. v. Dir. of Revenue*, 916 S.W.2d 196, 198 (Mo. banc 1996).

■ Applying these statutes, the AHC found that Hyatt purchased the electricity used in its customer-occupied hotel rooms and in banquet and meeting rooms for resale, as that term is defined in section 144.605.7, rather than for its own use and consumption, because it placed a thermostat in each room, and the cost of that electricity was factored into the cost of each room, thereby transferring control of and selling the right of control the electricity to those renting its rooms.[2]

The Director argues that the AHC erred in focusing on the transfer of control over the use of the electricity to the customer who rents a room. Director argues that it

should instead have focused on "the economic reality of the transaction," and, specifically, the fact that Hyatt is in the hotel business, not the electricity business. Its business is thus not reselling electricity to its guests, but supplying rooms to its guests. The fact that the rooms use electricity, and that the customer can control the amount of electricity used in each room, is just part of the rental of the room, Director argues, not a sale of electricity.

■ If the relevant statutes made the economic realities of a situation the determinative factor in deciding whether a sale was subject to tax, the Director's argument would have greater merit. No one claims that Hyatt is in the business of selling electricity, and the argument that it is selling hotel rooms with lights and power, not electricity, is intuitively appealing. But, the statutes do not make that the determinative issue. Rather, as just noted, the statutes provide for an exemption from sales tax for all electricity and tangible personal property that is purchased for resale, not just for purchases by those in the business of reselling. *See* **sec. 144.010.1(10); sec. 144.605(7).**

■ This Court's discussion of similar issues in *Kansas City Royals Baseball Corp.* is instructive. In that case, the Court focused on whether the goods were purchased for resale, not on whether they were purchased by a corporation in the business of selling such tangible goods. The Court held that the Royals were entitled to a refund of use tax paid on promotional items such as baseball caps, gloves, and t-shirts that it purchased from out-of-state vendors, because when it later gave them to fans who paid to attend particular baseball games, the items were considered to be "resold" to the fans. 32

2. The AHC rejected KCP & L's argument that it also resold the electricity used in vacant

hotel rooms, as control of that electricity is not transferred to a customer.

S.W.3d at 563. Although all paying fans did not get the items, and although no fan paid anything above the usual ticket price to obtain the items, the cost of each item was factored into overall ticket prices. *Id.* at 561–62, 563.[3]

Similarly, *King v. National Super Markets, Inc.,* 653 S.W.2d 220 (Mo. banc 1983), held that a retail grocery store was not obligated to pay use tax on the paper bags it used to bag groceries. Because the grocery store factored the cost of the paper bags in computing the price of the merchandise it charged its customers, it effectively sold the bags to its customers and, therefore, its purchases were sales for resale, exempt from use tax. *Id.* at 221–22.[4] *See also Dean Machinery Co. v. Director of Revenue,* 918 S.W.2d 244, 245–46 (Mo. banc 1996) (Where heavy equipment repair business provided additional parts, called rework parts, free of charge if it accidentally damaged customer's equipment during installation, although it covered the cost of rework parts in the price it charged for the new parts, the AHC correctly determined that the rework parts were purchased for resale and excluded from sales tax because the business produced evidence satisfying test for resale exemption).

The Director attempts to distinguish these cases by noting that in them, the customers actually got to take the resold items—be they baseball caps or paper bags or reworked parts—with them. By contrast, title to the electricity does not transfer to the customer who rents a room at the Hyatt; the customer cannot take the electricity with him or her when leaving the hotel.

This argument ignores the fact that Missouri's statutes provide that a transfer of property qualifies as being held for resale not only where title to it is passed to another, but also where a transfer is made by which "the right to use, store or consume" the property is passed to another for consideration. *Sec.* 144.605(7). This principle was applied in *Sipco, Inc. v. Director of Revenue,* 875 S.W.2d 539 (Mo. banc 1994). In that case, a butcher shipped its pork to customers packed in dry ice, incorporating the cost of the dry ice in the overall cost of the purchase and shipping of the pork. *Id.* at 540, 542. The customer was free to use or discard the dry ice as it saw fit. *Id.* at 542. The customer did not pay a specific extra price for the dry ice and sometimes the dry ice evaporated before the product even reached the customer. *Id.* at 542 & n. 4. Nonetheless, this Court held that the dry ice was resold to the customer along with the pork, and so was exempt from use tax because it was property held for resale. *Id.* at 542. *See also Brambles Indus. v. Director of Revenue,* 981 S.W.2d 568, 570 (Mo. banc 1998) (transfer of the right to use property is sufficient to qualify as a resale; transfer of title is not required under section 144.605(7)).

As these cases demonstrate, the distinctions the Director draws between sale of electricity and sale of the products at issue in prior cases are not determinative. The issue under the statutes is transfer of control of the electricity. Here, Hyatt transfers the right to use or consume electricity in its occupied customer space by providing thermostats in each hotel room and banquet and meeting room so that the

---

3. A taxpayer is required only to show that it considered this cost in setting its prices; it need not show "a calculated cost specifically factored into the price for resale." *Sipco, Inc. v. Director of Revenue,* 875 S.W.2d 539, 542 (Mo. banc 1994).

4. The resale exemption is analyzed similarly under both use tax and sales tax schemes. *See House of Lloyd, Inc. v. Director of Revenue,* 884 S.W.2d 271, 274 (Mo. banc 1994).

customer renting the room can control the temperature. While, as the Director notes, not all customers take advantage of their right to control the temperature by using the thermostat, they still have the right to do so. Further, they pay consideration for that right when they pay for rental of the room, for the evidence below was that the cost of the electricity was factored into the cost of each room rented. Moreover, the inability of customers to take electricity with them follows from the nature of electricity. It cannot safely be transported by a customer, and must be used by the customer at the time of purchase. *See Utilicorp United, Inc. v. Director of Revenue,* 75 S.W.3d 725, 728 & n. 6 (Mo. banc 2001).[5] Yet, section 144.010.1(10)(b) demonstrates that the legislature clearly intended the relevant statutes to govern sales of electricity rather than merely sales of tangible personal property.

For all these reasons, KCP & L was entitled to a refund of the sales tax it paid on purchases of electricity for resale to those renting customer space.

## II. DETERMINATION OF AMOUNT OF REFUND

■ The Director also argues that even if KCP & L would be entitled to a refund for the electricity used in its customer spaces, it failed to meet its burden of showing the portion of its $89,075.03 in electricity costs attributable to customer spaces. The AHC agreed with the Director that KCP & L's evidence was not as clear-cut or specific as it should be. In particular, KCP & L offered four wildly conflicting estimates of the amount of square footage devoted to customer space, ranging from 88% of the hotel footage to 66.7%. But, the AHC resolved these dis-

crepancies against KCP & L, and decided to "approximate the tax paid on electricity for consumer space as $89,075.03 × 66.7% = $59,413.05." It then reduced the $59,413.05 figure by 30%, to account for the 30% vacancy rate in customer space, so that it ultimately allowed a refund of only $41,589.14.

The Director argues that it was also KCP & L's burden to show that the cost of the electricity was evenly distributed over customer spaces and non-customer spaces, and to overcome the Director's argument that it was likely that more electricity per square foot was used by non-customer spaces such as kitchens and laundries than in customer rooms.

■ The AHC addressed this issue by noting that the proper apportionment of the electricity was an issue of fact, and the statutes commit the determination of factual issues to the AHC's discretion. *Kansas City Power & Light Co. v. Director of Revenue,* 783 S.W.2d 910, 912 (Mo. banc 1990). Under *Dick Proctor Imports v. Director of Revenue,* 746 S.W.2d 571 (Mo. banc 1988), where evidence is not sufficient to allow for a precise calculation of the amount of tax, then "the Commission shall make as close an approximation as it can. Doubt may be resolved against [the taxpayer] at whose door the uncertainty can be laid." *Id.* at 575.

Applying this rule to the evidence before it, the AHC held that, while the Director's speculation that kitchens use more electricity than hotel rooms sounded logical, the AHC could base its decision only on the record in the case before it, and that record contained no evidence of a differential in the electricity used by various hotel locations. Therefore, the AHC concluded, it was logical to allocate the electricity

5. As Judge Wolff observed in *Utilicorp,* at 728 n. 6, "[e]lectricity can be touched, and when a person does so and thereby completes an electrical circuit, it may be the last earthly sensation he or she feels."

evenly across the hotel's square footage, by comparing the percentage of customer space square footage to the total square footage. The AHC recognized that other methods of computing taxable electricity costs might theoretically be better, but found this to be the best method available on the record before it. The AHC's determination of factual issues will be upheld if they are "authorized by law and supported by competent and substantial evidence upon the whole record." Sec. 621.193. The Director has not shown that the AHC erred in determining that the taxpayer met its burden of showing that it overpaid taxes in the amount set out by the AHC.

### III. CONCLUSION

For all of these reasons, the AHC did not err in determining that KCP & L was entitled to a refund of $41,589.14. The judgment is affirmed.

All concur.