**TRACFONE WIRELESS, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**Case No. SC 95785**

Supreme Court of Missouri, **en banc.**

Opinion issued February 14, 2017

Opinion Modified on Court's Own Motion April 4, 2017

---

John S. Kingston, Janette M. Lohman, Thompson Coburn LLP, St. Louis, MO, for Appellant.

Emily A. Dodge, Attorney General's Office, Jefferson City, MO, for Respondent.

Laura Denvir Stith, Judge

TracFone Wireless, Inc., a Delaware corporation with its headquarters in Miami, Florida, seeks review of the Administrative Hearing Commission's denial of its request for a refund of the difference between the sales tax paid on its sales to Missouri residents and the use tax it believes should have paid. TracFone argued it qualified for the "in commerce" sales tax exemption set out in section 144.030.1.[1]

This Court affirms. The burden is on the taxpayer to prove it qualifies for an exemption. The record supports the Commission's determination that the true object of the transactions was the sale of access to telecommunications services to its Missouri customers, and the equipment and "Airtime" (TracFone's proprietary name for its package of minutes of access to cell towers and other equipment) were merely

---

1. All statutory citations are to RSMo Supp.    2013 unless otherwise indicated.

incidental to the sale of access to those services in Missouri. As TracFone failed to meet its burden of showing that the "in commerce" exemption applies, the decision of the Commission is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Nature of TracFone's Transactions with Missouri Customers

TracFone operates a telecommunications business, but owns no telecommunication facilities, such as cell towers. Instead, TracFone contracts with several telecommunication carriers in Missouri, including Alltel, AT&T, US Cellular, T-Mobile, and Verizon, to buy access to their telecommunication facilities and services. It then sells prepaid access to what it calls its "virtual network"—actually the networks of the contracted carriers—in packages consisting of either a set number of minutes or "unlimited" minutes for a set time period, usually a month. TracFone refers to these packages as "Airtime."

TracFone has directly resold prepaid access to wireless telecommunications services to end users throughout Missouri continuously for more than 15 years. These services can be accessed only through use of TracFone handsets. These handsets are usable only when activated by TracFone and only to access telecommunications services sold by TracFone. They cannot be unlocked, modified, resold, or used to access another company's telecommunications services, and TracFone's end-user customers specifically agree not to use the handsets with another service provider.

The terms of services agreement also prohibits the end user from selling the handset. Once a customer has activated a handset, the customer can purchase additional Airtime without buying a new handset. All orders are taken in TracFone's Miami office, and all payments are made to the Miami office. TracFone has no warehouses or other facilities in Missouri, so handsets are shipped to Missouri customers from outside the state. The testimony before the Commission showed TracFone sold handsets and Airtime to its Missouri customers, who gave TracFone the ZIP code for the location where they would use their phones the most. The TracFone witness agreed that "TracFone is not making any argument that the customers aren't using the phone in Missouri." Customers in Missouri would access telecommunication services through Missouri cell towers and other facilities. TracFone resells telecommunication services in every ZIP code in Missouri, and these services include local services such as local phone service and 911 emergency services.

### B. Procedural History

In May 2013, TracFone sought partial refunds of the sales tax paid on wireless telecommunications services from November 2009 through January 2010 and from February 2010 through February 2011. TracFone claimed that it sold handsets and Airtime from its Florida offices and did not make retail sales in Missouri and so did not owe Missouri sales tax on what it claimed were out-of-state sales of equipment and services. Rather, it argued, the purchases were subject to Missouri use tax. TracFone, therefore, sought the difference between the Missouri sale tax paid and the Missouri use tax on the purchases of handsets and Airtime. The Director of Revenue denied the requested refunds, and TracFone appealed to the Commission.

Before the Commission, TracFone argued the sales qualified for the "in commerce" exemption in section 144.030.1 for sales that occur "in commerce" between Missouri and another state. The Commission disagreed and found in favor of the

Director. First, it held that TracFone was selling access to telecommunications services in Missouri and, therefore, was engaged in retail sales in Missouri, stating:

> While TracFone asks us to focus on its sales of Airtime and handsets to its customers, emphasizing that those sales occurred between its headquarters in Miami and its customers in Missouri, what it was really selling was access to telecommunications networks it leased from cell phone carriers. The handsets it sold could only be used to access those networks; they could not be unlocked, otherwise modified, or resold. Accordingly, those sales fit the language of § 144.020.1(4), which imposes:
>
>> A tax equivalent to four percent on the basic rate paid or charged on all sales of local and long distance telecommunications service to telecommunications subscribers and to others through equipment of telecommunications subscribers for the transmission of messages and conversations and upon the sale, rental or leasing of all equipment or services pertaining or incidental thereto . . . .

The Commission, accordingly, found that TracFone's sales were subject to sales tax under section 144.020.1(4).

The Commission then found that TracFone was not entitled to claim the "in commerce" exemption from sales tax set out in section 144.030.1 for "such retail sales as may be made in commerce between this state and any other state of the United States" because TracFone was selling local access to telecommunications services in Missouri:

> [T]he Airtime TracFone sold to its customers was nothing more (or less) than access to telecommunications services. That access was more than an "integral part" of the transaction; it was the transaction's true object, what the customer wanted and what TracFone was selling. Furthermore, the handsets were tangible personal property in only an abstract sense. The modifications and limitations built into the handsets—special software to track customer use, use limited to networks TracFone provided, inability to unlock, modify, or resell them—made them "equipment . . . pertaining or incidental to [telecommunications service]." Therefore, the true object of TracFone's sales consisted of selling telecommunications service to its Missouri customers. Accordingly, TracFone is not entitled to the exemption it seeks.

TracFone filed a petition for review arguing that, while the sales at issue may be retail sales under section 144.020.1, they qualify for the "in commerce" exemption set out in section 144.030.1. Because this appeal involves construction of Missouri's revenue laws, this Court has exclusive jurisdiction of the appeal. *Mo. Const. art. V, § 3.*

## II. STANDARD OF REVIEW

The Commission's decisions "shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record," provided "a mandatory procedural safeguard is not violated" and the decision is not contrary to what this Court concludes were the "the reasonable expectations of the general assembly at the time such authority was delegated to the agency." *§ 621.193.* This Court reviews the Commission's interpretation of revenue statutes *de novo. IBM Corp. v. Dir. of Revenue*, 491 S.W.3d 535, 538 (Mo. banc 2016). "Tax exemptions are strictly construed against the taxpayer." *Id.* The burden is on the taxpayer to prove an exemption applies by "clear and unequivocal proof," and "all

doubts are resolved against the taxpayer." *Id.*

## III. TRACFONE'S SALES DO NOT QUALIFY FOR THE "IN COMMERCE" EXEMPTION

*Six Flags Theme Parks, Inc. v. Dir. of Revenue,* 102 S.W.3d 526, 527–28 (Mo. banc 2003), held that to determine whether a particular retail sale qualifies for the "in commerce" exemption, one must look for the "true object" of the transaction. In *Six Flags,* the transactions were the sales of admission tickets and season passes to out-of-state customers. Phone orders for tickets were taken from customers calling from outside Missouri; a portion of the fees were collected outside Missouri; credit card payments were processed outside Missouri; and the tickets were shipped to addresses outside Missouri. *Id.* at 528. Despite these "incidental or nonessential interstate elements" of the transactions, *Six Flags* held that the sales qualified as taxable sales in Missouri because, at heart, each sale was "essentially [a] ... local transaction," the essence or "true object" of which was admission to the Missouri amusement park:

> The true object of the transactions in this case is the service of amusement, not the sale of tangible personal property. There is no evidence that the tickets themselves have any value independent of the customer's permission to enter the amusement park. These transactions do not depend on the transfer of title or ownership in any tangible property; instead, they are the sale of permission to enter a place of amusement and become the recipient of a service. Given that the thing of value purchased by the customer is not the ticket, but the entry into the amusement park, the transaction does not take place in commerce between the states....

The object of the transaction and the taxable event is the admission to a place of amusement in Missouri, which is taxable pursuant to section 144.020.1(2). The "in commerce" exemption of section 144.030.1 does not apply. Thus, Six Flags is not entitled to a refund of sales tax paid on its sales of tickets and season passes.

*Id.*

Although TracFone claims that *Six Flags* is out of step with other Missouri tax cases, it cited and relied on principles set out in prior cases such as *Lynn v. Dir. of Revenue,* 689 S.W.2d 45, 46, 47–48 (Mo. banc 1985). *Lynn* held that transactions for sightseeing excursions on the Missouri River near Kansas City that began and ended in Missouri but crossed into Kansas for part of the trip did not fall within the "in commerce" exemption even though it was intended that part of the excursion would occur in another state because "the business of transporting passengers is not what is being taxed. The object of the taxation in this case was the admission fee charged for a place of amusement or recreation." *Id.* at 48.

*Branson Scenic Ry. v. Dir. of Revenue,* 3 S.W.3d 788, 789 (Mo. App. 1999), used similar reasoning. Applying what it found was the settled understanding of the "in commerce" exemption, *Branson* held that a scenic railway excursion departing from and returning to Missouri that sometimes crossed into Arkansas did not fall under the exemption because its "objective" was not transportation in commerce but entertainment, access to which occurred in Missouri. Because the legislature intended to tax "fee[s] paid to, or in, a place of amusement, entertainment or recreation," the transactions were taxable and did not qualify for the exemption. *Id.* at 790–91.

TracFone has described its business as selling cell phone service through a

"virtual network" composed of services obtained from numerous licensed carriers who are licensed operators of wireless networks. The essence of the transactions was the sale of telecommunication services, not the sale of tangible personal property in commerce between states.[2] Like the tickets in *Six Flags* and the crossing of state lines in *Lynn* and *Branson*, the true object or objective of the transactions at issue in this case was the sale of access to telecommunication services provided by TracFone in Missouri. TracFone's sales of handsets and Airtime were only incidental.

TracFone argues that this Court should reject the "true object" test because the plain text of the exemption set out in section 144.030.1 requires this Court to hold that all sales made in Missouri by sellers located outside the state are "in commerce." In support, TracFone cites cases finding sales into Missouri by non-Missouri sellers were subject to the "in commerce" exemption. But in each case, the true object of the sales was the purchase of tangible personal property.[3] The record supports that the true object of the sales was the sale of access to telecommunications services. The cases relied on by TracFone are not on·point.

TracFone also says that Missouri· constitutionally is not permitted to impose sales tax on sellers located outside the state. While the Commerce Clause requires a state nexus, *Commercial Barge Line Co. v. Dir. of Revenue*, 431 S.W.3d 479, 483 (Mo. banc 2014), *citing Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), TracFone has not cited any cases holding taxation of access to telecommunications services is impermissible, nor did it include any constitutional argument of this nature in its points relied on. Additionally, in argument before the Commission, TracFone stated, "It's also not an issue in dispute in this lawsuit whether there is sufficient nexus with Missouri to require TracFone to collect and remit taxes. TracFone is not contesting nexus here."

---

**2.** The record contains ample evidence that TracFone sells and provides access to telecommunication services in Missouri. At the hearing before the Commission, TracFone's sole witness, its vice president of corporate taxation, testified that TracFone has been providing telecommunication services in Missouri continuously since 1998 or 1999. Documentary evidence in the record shows that these services include local telephone and 911 emergency telephone services. Testimony also shows that before a handset can be used, the customer in Missouri must activate the handset. As part of that activation process, the customer enters the ZIP code where the customer anticipates the handset will be used the most. Billing and shipping address ZIP codes provide the Missouri ZIP codes listed in TracFone's refund request for the handset itself. For all of the transactions in question, the ZIP codes are Missouri ZIP codes. When a customer uses TracFone's services in Missouri, the testimony showed, cell towers owned by the contracted carriers located in Missouri must be used. The testimony also showed that for many calls, landlines in Mis-souri must be used. And TracFone's witness agreed that "TracFone is not making any argument that the customers aren't using the phone in Missouri."

While TracFone says Missouri customers also could access telecommunications services elsewhere, the record does not establish that most or even any of the cell phone service was used outside Missouri, and as the Director of Revenue notes, absent a showing that out-of-state use was an integral part of the transaction, the fact that a good or service was able to be used in other locations after the transaction is completed does not affect whether it qualifies ·for the "in commerce" exemption. *Overland Steel, Inc. v. Dir. of Revenue*, 647 S.W.2d 535, 539 (Mo. banc 1983).

**3.** *See, e.g., American Bridge Co. v. Smith*, 352 Mo. 616, 179 S.W.2d 12 (Mo. 1944) (sale of steel); *Binkley Coal, Co. v. Smith*, 352 Mo. 627, 179 S.W.2d 17 (1944) (sales of coal f.o.b. outside of Missouri); *Curtis Publ'g Co. v. Bates*, 363 Mo. 287, 250 S.W.2d 521 (1952) (sale of magazines to Missouri subscribers).

■ Finally, TracFone argues that the legislature must not have intended the sales to be subject to sales tax because they are subject to Missouri's use tax and so should be taxed under section 144.610.1, which provides in relevant part: "A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property ... purchased on or after the effective date of sections 144.600 to 144.745 in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020." *§ 144.610. 1.*

As just noted, here the tax is imposed on the sale of access to telecommunications services in Missouri, and by its terms the use tax is inapplicable, as it is imposed only on the purchase of "tangible personal property." *Id.* Even assuming title to the handsets exchanged hands outside Missouri, the sales were only incidental to the true object of the transactions at issue, which was the sale of telecommunication services in Missouri. While TracFone argues it is unfair to apply a use tax only on tangible personal property and not services, the decision whether to impose use tax on services is for the legislature, not this Court. TracFone cites no cases holding that a state cannot choose to impose a use tax more narrowly than it imposes a sales tax.[4]

## IV. CONCLUSION

The true object of TracFone's business was the sale of prepaid wireless telecommunication services, including the sale of handsets as equipment incidental to the sale of telecommunication services. The transactions do not qualify for the exemption set out in section 144.030.1 for sales "in commerce" between states. The Commission did not err in finding that TracFone is not entitled to a partial refund of the sales tax paid on these transactions.

Breckenridge, C.J., Fischer, Draper, Wilson and Russell, JJ., concur.

---

4. TracFone's authorities prohibit only the converse situation of imposing a greater use tax because that would unconstitutionally "obstruct, aim at or discriminate against interstate commerce" by imposing a "burden upon interstate commerce which intrastate commerce did not bear." *American Bridge Co. v. Smith,* 352 Mo. 616, 179 S.W.2d 12, 14–15 (1944); *see also Kirkwood Glass Co., Inc. v.*

*Dir. of Revenue,* 166 S.W.3d 583, 587 (Mo. banc 2005) ("[T]he use tax, therefore, was constitutionally infirm, for, '[w]here the use tax exceeds the sales tax, the discrepancy imposes a discriminatory burden on interstate commerce' "), *quoting Associated Indus. of Mo. v. Lohman,* 511 U.S. 641, 649, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994).