

# SUPREME COURT OF MISSOURI
## en banc

DI SUPPLY I, LLC AND )      *Opinion issued March 17, 2020*
ITS INDIVIDUAL MEMBERS, )
                          )
           Appellants, )
                          )       No. SC97932
v. )
                          )
DIRECTOR OF REVENUE, )
                          )
           Respondent. )

**PETITION FOR REVIEW OF A DECISION OF THE
ADMINISTRATIVE HEARING COMMISSION OF MISSOURI
The Honorable Sreenivasa Rao Dandamudi, Commissioner**

DI Supply I, LLC, and its individual members (collectively DI Supply) petition this Court for review of a decision from the administrative hearing commission, which determined that DI Supply's room furnishing sales to the Drury Hotels are not exempt from sales tax under the resale exemption in section 144.010.1(11).[1] This Court affirms.

---

[1] All statutory references are to RSMo Supp. 2012, unless otherwise noted. The exemption is now found in section 144.010.1(13), RSMo Supp. 2019.

**Factual and Procedural History**

The material facts of the case are not in dispute. At all relevant times, Drury Hotels Company, LLC, ("DHC") owned DI Supply and managed several dozen hotels in Missouri ("Drury Hotels"). DI Supply sells furnishings and supplies (collectively room furnishings) to the hotels managed by DHC. A department of revenue audit for the period of March 2012 through February 2015[2] determined DI Supply failed to remit sales tax on more than $11 million in taxable sales of room furnishings to Drury Hotels during the audit period. DI Supply contested this tax liability before the administrative hearing commission arguing these items of tangible personal property were purchased for resale to hotel guests and not subject to Missouri local sales or use tax. The lengthy roster of items involved in these transactions included linens, mattresses, chairs, desks, trash receptacles, DVD players, soap dispensers, wall art, and irons. The commission upheld $613,159.38 of the assessment for sales tax and interest. DI Supply now petitions this Court for review.

**Jurisdiction and Standard of Review**

Because this case involves construction of Missouri's revenue laws, this Court has exclusive jurisdiction. Mo. Const. art V, § 3; *see also* § 621.189. This Court reviews the commission's interpretation of revenue laws *de novo*. *Brinker Mo., Inc. v. Dir. of Revenue*, 319 S.W.3d 433, 435 (Mo. banc 2010). This Court upholds the commission's decision if it is authorized by law, is supported by competent and substantial evidence, does not violate mandatory procedural safeguards, and "is not clearly contrary to the General Assembly's

_____

[2] There were no changes to the relevant portions of the statute during this period.

reasonable expectations." *Bus. Aviation, LLC v. Dir. of Revenue*, 579 S.W.3d 212, 215 (Mo. banc 2019); § 621.193. This Court strictly construes tax exemptions against the taxpayer. *TracFone Wireless, Inc. v. Dir. of Revenue*, 514 S.W.3d 18, 21 (Mo. banc 2017). A taxpayer must demonstrate that an exemption applies by "clear and unequivocal proof." *Id.* Any doubt regarding the applicability of an exemption is resolved in favor of taxation. *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012).

**Analysis**

Section 144.020.1(1) imposes sales tax on the "retail sale in this state of tangible personal property." A retail sale is defined by the term "sale at retail" in section 144.010.1(11) as "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and **not for resale in any form as tangible personal property**, for valuable consideration." (Emphasis added). Sales of tangible personal property sold for the purpose of reselling to another customer in the regular course of business are, therefore, exempt from sales tax by section 144.010.1(11). This Court has explained the "underlying reason for the resale exemption in the Missouri tax code is avoiding double taxation . . . ." *ICC Mgmt., Inc. v. Dir. of Revenue*, 290 S.W.3d 699, 702 (Mo. banc 2009), *abrogated on other grounds by* §144.018, RSMo Supp. 2010. DI Supply contends the room furnishings sold to Drury Hotels are exempt from sales tax under the section 144.010.1(11) resale exemption because Drury Hotels include the cost of the room furnishings into the nightly rate for a hotel room. DI Supply argues this means Drury Hotels are reselling the room furnishings to the hotel customers, so the exemption applies to the disputed transactions

3

between DI Supply and Drury Hotels. This Court, therefore, must determine if DI Supply sold room furnishings to Drury Hotels for resale to hotel guests as defined by the resale tax exemption provided in section 144.010.1(11).

DI Supply contends the elements of a "resale" are precisely the same as the elements of a sale, which are "(1) [a] transfer, barter or exchange (2) of title or ownership of tangible personal property **or the right to use**, **store or consume** the same (3) for a consideration paid or to be paid." *Aladdin's Castle v. Dir. of Revenue*, 916 S.W.2d 196, 198 (Mo. banc 1996) (emphasis added); *Sipco*, 875 S.W.2d at 542; *Kansas City Royals Baseball Corp. v. Dir. of Revenue*, 32 S.W.3d 560, 562 (Mo. banc 2000). Because hotel customers had the "right to use" the room furnishings, DI Supply argues renting a hotel room constitutes a resale of the room furnishings to the hotel customers. But as DI Supply acknowledges, the elements of "resale" as set forth in *Aladdin's Castle, Sipco,* and *Kansas City Royals* derive from the definition of "sale" as found in the use tax statutes, sections 144.600 through 144.746, not the sales tax statutes, section 144.010 through 144.527. Assuming DI Supply's position were reasonable based on this Court's history of applying use tax definitions in sales tax cases, such a mixing of statutory definitions was in error. The sales tax and use tax resale exclusions derive from separate and distinct statutes requiring independent analysis, and application of the statutorily correct exemption requires application of the sales tax exemption to this sales tax case.

**Use Tax Exemption**

Out-of-state purchases are subject to a use tax for the privilege of storing, using or consuming within the state tangible personal property. § 144.610, RSMo 2000. A notable use tax exemption is tangible personal property that is purchased out of state solely for resale. The use tax resale exemption is a creation of statute. Section 144.615(6) specifically exempts [t]angible personal property held by processors, retailers, importers, manufacturers, wholesalers, or jobbers solely for resale in the regular course of business from use tax." The definition of "resale" as used in the use tax resale exemption is derived from the definition of "sale" found in section 144.605(7). *King v. Nat'l Supermarkets, Inc.*, 653 S.W.2d 220, 221 (Mo. banc 1983) (citing *Smith Beverage Co. v. Reiss*, 568 S.W.2d 61, 64 (Mo. banc 1978)), *overruled on other grounds by Sipco, Inc. v. Dir. of Revenue*, 875 S.W.2d 539, 541-42 (Mo banc. 1994).

Section 144.605(7) defines "sale" as

"any transfer, barter or exchange of the title or ownership of tangible personal property, **or the right to use, store or consume** the same, for a consideration paid or to be paid, and any transaction whether called leases, rentals, bailments, loans, conditional sales or otherwise, and not withstanding that the title or possession of the property or both is retained for security."

(Emphasis added). Under this statute, a transfer of the right to use constitutes a "sale" for purposes of the resale exemption. For the use tax resale exemption, the elements of a resale set forth in *Aladdin's Castle*, *Sipco*, and *Kansas City Royals,* relied on by DI Supply, provide a taxpayer qualifies for the use tax resale exemption if the taxpayer can show a subsequent transaction that meets these three elements: "(1) [a] transfer, barter or exchange (2) of the title or ownership of tangible personal property or the right to use, store or

5

consume the same (3) for a consideration paid or to be paid." *Aladdin's Castle*, 916 S.W.2d at 198.

## Sales Tax Exemption

"Retail sales" that occur within the state are subject to a sales tax. § 144.020.1(1). As with the use tax, there is a resale exemption from sales tax. The resale exemption from sales tax has a different derivation than does the resale exemption from use tax. The sales tax exemption "is derived from the text of the statutory definition of 'sale at retail' . . . . A 'sale at retail,' which is by this definition a sale 'not for resale,' is subject to tax under section 144.020.1 . . . , and by implication, a sale for resale is excluded from tax." *Westwood Country Club v. Dir. of Revenue,* 6 S.W.3d 885, 889-90 (Mo. banc 1999). "Sale at retail means any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration . . . ." § 144.010.1(11).

Under this definition, sales of tangible personal property sold for the purpose of reselling to another party in the regular course of business are exempt from sales tax. The definition of "sale at retail," however, requires the transfer of title or ownership for the purchaser's use or consumption, and anything that does not involve the transfer of title or ownership is not a sale at retail. Absent from this definition is any reference to the "right to use, store or consume" found in the use tax statute. In other words, to be exempt from sales tax, the resale must include the transfer of title or ownership, not merely the transfer

of the right to use, store or consume the property.[3]  Mirroring the elements test from

*Aladdin's Castle*, *Sipco*, and *Kansas City Royals*, to constitute a sale at retail for purposes

of the sales tax resale exemption, a transaction must meet three elements: (1) a transfer,

barter or exchange (2) of the title or ownership of tangible personal property for that

purchaser's use or consumption (3) for a consideration paid or to be paid.  Because the

definition of "sale at retail" does not include the right to use, store or consume tangible

personal property, this term is absent from the elements of a resale for purposes of the sales

tax resale exemption.

### Origins of Application of Use Tax Definitions in Sales Tax Cases

DI Supply's reliance on a definition found in the use tax statute in this sales tax case

is understandable given this Court's resale exemption jurisprudence.  For at least 25 years,

this Court has cited use tax cases when analyzing sales tax resale exemptions, and vice-

versa.  This confusion appears to originate in *Sipco*, a use tax case.  On its own, the *Sipco*

opinion provides no clear basis for this muddled case law.  The Court in *Sipco* correctly

applied the definition of "sale" from the use tax statute, section 144.605, to define "resale"

in this use tax case.  875 S.W.2d at 541.  *Sipco*, however, went on to observe:

> Sales that occur within the State of Missouri are subject to a sales tax.
> § 144.020. Out of state purchases are subject to a compensating use tax.
> § 144.610. Both the sales and use tax statutes contain exclusions and exemptions
> that eliminate taxation of the sale or use of property which is to be resold.

---

[3] Further, the sales tax exemption specifically excludes transactions "for resale in any form as tangible personal property." § 144.010.1(13).  The resale of tangible personal property denotes that there must be a transfer of a property interest in the property itself and not a mere license to use, store, or consume the property.  The plain language of the exemption, therefore, establishes that the transfer of the right to use, store or consume cannot constitute a resale under the sales tax statute.

7

§ 144.010(8); § 144.605(10); § 144.615(6). These sections avoid multiple taxation of the same property as it passes through the chain of commerce from producer to wholesaler to distributor to retailer.

*Id.* While this language from *Sipco* accurately noted that the use tax and sales tax resale exemptions are similar in purpose, the Court in *Sipco* did not apply the definition of "sale" from the use tax statutes to a sales tax resale exemption and did not hold the use and sales tax resale exemption must be analyzed identically. However, as the director of revenue points out in his brief, in the years since *Sipco*, other cases have carelessly asserted that the use tax "sale" definition was extended and applied to sales tax in *Sipco*.

A few months after *Sipco* was decided, this Court handed down *House of Lloyd, Inc. v. Dir. of Revenue*, 884 S.W.2d 271 (Mo. banc 1994) (*Lloyd II*).[4] In *Lloyd II*, this Court stated that the use tax exemption and the sales tax exemption must have identical meaning and application:

> The use tax "is designed to complement and to protect the tax imposed upon the occupation of selling at retail ... [within the state of Missouri], and the validity of its exemptions is to be determined in the light of that purpose." For the taxes to complement one another, the phrase found in the use tax exemption, "[t]angible personal property held ... solely for resale," § 144.615(6), must carry an identical meaning and application to the sales taxes phrase "tangible personal property ... not for resale in any form." § 144.010.1(8).

*Id.* at 274 (alterations in original) (citation omitted). Although this quote references older versions of the relevant statutes, its holding may still apply to the current statutes. In *Lloyd II*, this Court was asked to determine whether a taxpayer who benefits from the use of the

---

[4] Two years prior, this Court heard a separate dispute on tax assessment in *House of Lloyd, Inc. v. Director of Revenue*, 824 S.W.2d 914 (Mo. banc 1992) (*Lloyd I*), *abrogated by Sipco*, 875 S.W.2d at 542.

8

tangible personal property qualifies for the use tax exemption upon resale. *Id.* In this context, the Court determined the use tax exemption must be as inclusive as the sales tax exemption in section 144.010.1(8), RSMo 1986, when interpreting the phrase "solely for resale." *Id.*[5] This holding in *Lloyd II* is a far cry from stating that the sales tax resale exemption must use the definition of "sale" from the use tax resale exemption statutes. But a few years later, this Court in *Dean Machinery Co. v. Director of Revenue*, a sales tax case, linked the *Sipco* "sale" definition elements and the *Lloyd II* holding and stated that the same resale exemption analysis can be applied to both use and sales tax:

> *Sipco* set out the elements necessary to establish a sale in the context of the use tax resale exemption: "(1) any transfer, barter or exchange; (2) of the title or ownership of tangible personal property ...; (3) for a consideration paid or to be paid." *Id.* at 541(quoting § 144.605(7), RSMo 1994). Although *Sipco* analyzed the elements of

---

[5] Although not referenced in *Lloyd II*, the source of this holding appears to be the commerce clause. *See* U.S. Const. art. I, sec. 8, cl. 3. The commerce clause prevents states from discriminating against interstate commerce by disproportionately taxing interstate transactions. *Commercial Barge Line Co. v. Dir. of Revenue*, 431 S.W.3d 479, 483 (Mo. banc 2014) (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)). Imposing a use tax on an out-of-state purchase when no sales tax would be imposed on an identical in-state transaction would discriminate against interstate commerce. However, "it was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden." *Complete Auto Transit*, 430 U.S. at 288. While the commerce clause restricts discrimination against interstate commerce, it does not regulate intrastate commerce and the application of sales tax within the state. A state is free to impose a higher tax on in-state transactions. As long as the use tax imposed on out-of-state commerce does not exceed sales tax imposed within the state, the commerce clause is not violated. *See Associated Indus. of Mo. v. Lohman*, 511 U.S. 641, 647 (1994). The end result is that "the stranger from afar is subject to no greater burdens . . . than the dweller within the gates." *Henneford v. Silas Mason Co.,* 300 U.S. 577, 584 (1937). Today's decision only implicates the definition of "sale at retail" as applied to the resale exemption from sales tax, as that is the only tax in dispute. Whether there are situations that implicate the commerce clause by the differing definitions of "sale" and "sale at retail" in the use tax and sales tax statutes is not before the Court.

a sale using the use tax statutory definition of sale, *Lloyd II* applied the *Sipco* analysis to both use and sales tax. *Lloyd II,* 884 S.W.2d at 275.

918 S.W.2d 244, 246 (Mo. banc 1996) (alteration in original). Notably, however, when defining "sale," *Dean Machinery* omits the "or the right to use, store, or consume" language, essentially using the definition of resale from the appropriate sales tax statutes, not the use tax statutes. Finally, this Court in *Brambles Industries v. Director of Revenue* states in a footnote that the use tax definition of "sale" was extended to sales tax. 981 S.W.2d 568, 570 n. 5 (Mo. banc 1998) ("Although *Sipco* is a use tax case, its analysis has been extended to sales tax."). The footnote cites *Dean Machinery* and *Lloyd II* as authority for applying the holding in *Sipco* to sales tax cases, *id*., but as set forth above, *Sipco, Lloyd II,* and *Dean Machinery* do not support such a holding. In the years that have followed, this Court has mistakenly employed the use tax definitions for both sales and use tax cases despite the differences between the statutes.

The effect is a long line of cases that unwittingly apply use tax definitions in sales tax cases, relying on the *Brambles* position that *Sipco, Lloyd II*, and *Dean Machinery* extended use tax resale exemption analysis to sales tax cases. *Kansas City Power & Light v. Dir. of Revenue,* 83 S.W.3d 548, 551 (Mo. banc 2002), another case relied upon by DI Supply, cited the use tax case *Kansas City Royals,* 32 S.W.3d at 562, and applied the use tax definition of "sale" in a sales tax case. In the analysis, the Court stated a transfer of property occurs when "the right to use, store or consume" is passed to another—the language from the use tax statute. *Kansas City Power & Light,* 83 S.W.3d at 552. Subsequent cases have also combined sales and use tax statutory definitions. *See Brinker*

10

*Mo., Inc. v. Dir. of Revenue*, 319 S.W.3d 433, 439 (Mo. banc 2010) (a use tax case that cites *Kansas City Power & Light,* a sales tax case); *Ronnoco Coffee Co. v. Dir. Of Revenue*, 185 S.W.3d 676, 679 (Mo. banc 2006) (a use and sales tax case that applied the "right to use" language from the use tax definition of resale to the sales tax analysis). This is a small sampling of the tangled analysis that led DI Supply to argue its sales are exempt from sales tax because the hotels "resell" the room furnishings by transferring the right to use them to hotel guests, despite the fact that the "right to use" is not mentioned in the statute setting forth a resale exemption from sales tax.

While this Court's muddled analysis has caused understandable confusion, the language of the statutes is clear. The sales tax and use tax "definitions of 'sale,' though similar, have different requirements." *Bus. Aviation*, 579 S.W.3d at 217 n.8. As such, the employment of the use tax definition of "sale" in sales tax resale exemption cases must no longer be followed.[6]

---

[6] The dissenting opinion argues this Court is bound by principles of *stare decisis* to follow the errant precedent listed above and continue employing the use tax definition of "sale" in sales tax resale exemption cases. While *stare decisis* promotes security in the law, "the adherence to precedent is not absolute, and . . . the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 644 (Mo. banc 2012) (quoting *Med. Shoppe Intern., Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 335 (Mo. banc 2005)). Upon careful examination of our prior cases, this Court's employment of use tax definitions in sales tax cases lacks a basis in precedent. In addition, this Court's application of use tax analysis to sales tax exemptions is not founded in the plain language of the sales and use tax statutes, which contain distinct wording, phrasing and structure. When this Court's own action has created a clearly erroneous standard, adherence to *stare decisis* is ill-advised. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 379 (Mo. banc 2014). Furthermore, inferring legislative approval from legislative inaction as the dissenting opinion suggests fails to contemplate the numerous forces at play in the legislative process. *Med. Shoppe*, 156

**Application to DI Supply**

DI Supply contests its sales tax liability for sales of room furnishings to Drury Hotels. To qualify for the resale exemption, DI Supply must show a sale at retail of the room furnishings from Drury Hotels to hotel guests as defined by section 144.010.1(11). As established above, to show a sale at retail, the taxpayer must show: (1) a transfer, barter or exchange (2) of the title or ownership of tangible personal property for that purchaser's use or consumption (3) for a consideration paid or to be paid. Because section 144.010.1(11) does not include the transfer of the right to use, store, or consume as a "sale at retail," this Court cannot consider whether the hotel customers' right to use the room furnishings implicates the resale exemption to sales tax as DI Supply contends. Rather, DI Supply must show title or ownership of the room furnishing transfers to hotel guests during the duration of their stay. While the record may establish that hotel guests pay consideration for the use of certain room furnishings, DI Supply cannot show that title or ownership of the room furnishings is transferred to hotel customers. The tangible personal property that DI Supply sells to Drury Hotels is not resold to hotel guests. Within the plain meaning of the sales tax statute, DI Supply fails to show that Drury Hotels transfer title or ownership of the room furnishings in dispute and, therefore, fails to show the applicability of the resale exemption by clear and unequivocal proof.

---

S.W.3d at 334-35. In any event, the plain language of the sales tax and use tax statutes creates different exemption requirements, and to hold that they create identical standards despite the clear difference in language would depart from this Court's mandate to strictly construe exemptions against the taxpayer. *TracFone*, 514 S.W.3d at 21-22.

**Conclusion**

The burden of proof was on DI Supply to prove that the items it sells to Drury Hotels are resold by the hotels. DI Supply failed to meet this burden. For the foregoing reasons, this Court affirms the commission's decision.

_____
W. Brent Powell, Judge

Draper, C.J, Wilson, Russell, Breckenridge and Stith, JJ., concur;
Fischer, J., dissents in separate opinion filed.



# SUPREME COURT OF MISSOURI
## en banc

DI SUPPLY I, LLC,                                                  )
AND ITS INDIVIDUAL MEMBERS,     )
                                                        )
                    Appellants,       )
                                                        )
v.                                                 )     No. SC97932
                                                        )
DIRECTOR OF REVENUE,           )
                                                        )
                    Respondent.     )

## DISSENTING OPINION

I respectfully dissent. The principal opinion's analysis is contrary to this Court's prior cases interpreting use and sales tax statutes.[1] The General Assembly's inaction in the aftermath of those cases further strengthens the need to adhere to stare decisis. Because DI Supply has shown it resold the room furnishings to its customers in line with this Court's construction of § 144.605(7),[2] the Administrative Hearing Commission's (AHC) decision

---

[1] The principal opinion recognizes, "[f]or at least 25 years, this Court has cited use tax statutes when analyzing sales tax resale exemptions, and viceversa." Slip op. at 7. The principal opinion overrules, at least in part, the following cases from this Court: *Brinker Missouri, Inc. v. Director of Revenue*, 319 S.W.3d 433 (Mo. banc 2010); *Ronnoco Coffee Co. v. Director of Revenue*, 185 S.W.3d 676 (Mo. banc 2006); *Kansas City Power & Light Co. v. Director of Revenue*, 83 S.W.3d 548 (Mo. banc 2002); *Brambles Industries, Inc. v. Director of Revenue*, 981 S.W.2d 568 (Mo. banc 1998); *Dean Machinery Co. v. Director of Revenue*, 918 S.W.2d 244 (Mo. banc 1996); *House of Lloyd, Inc. v. Director of Revenue*, 884 S.W.2d 271 (Mo. banc 1994), and many other cases that have used the analysis the principal opinion condemns.

[2] All statutory references are to RSMo Supp. 2012, unless otherwise provided.

should be reversed and DI Supply should be exempt from paying sales tax on the disputed items.

The sales tax statute and the use tax statute exempt the imposition of tax on property for resale. *Sipco, Inc. v. Dir. of Revenue*, 875 S.W.2d 539, 541 (Mo. banc 1994). In *House of Lloyd, Inc. v. Director of Revenue*, this Court expanded on its prior holding in *Sipco*, declaring:

> The use tax is designed to complement and to protect the tax imposed upon the occupation of selling at retail ... [within the state of Missouri], and the validity of its exemptions is to be determined in the light of that purpose. For the taxes to complement one another, the phrase found in the use tax exemption, "[t]angible personal property held ... solely for resale," § 144.615(6), ***must carry an identical meaning and application to the sales taxes phrase*** "tangible personal property ... not for resale in any form." § 144.010.1(8).

884 S.W.2d 271, 274 (Mo. banc 1994) (alterations in original) (internal citations and quotations omitted) (emphasis added). The principal opinion is correct in acknowledging this quotation does not directly mandate the application of the definition of "sale" from the use tax statutes to sales tax cases. However, it fails to acknowledge the broader point; for both taxes to complement each other, their respective language must be harmonized to allow for identical application. *Id.*; *see also Batchel v. Miller Cnty. Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003) ("The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other.").

This Court has applied the use tax definition of "sale" contained in § 144.605(7)[3] to determine if there is a resale for purposes of the sales tax exemption. *See Kansas City Power & Light Co.*, 83 S.W.3d at 551 ("[T]o determine whether there has been a resale, a court must find that there has been (1) a transfer, barter, or exchange (2) of the title or ownership of tangible personal property or the right to use, store, or consume the same (3) for consideration paid."); *Ronnoco Coffee*, 185 S.W.3d at 680-81 (applying the *Kansas City Power & Light Co.* elements to a sales tax case); *Brambles Indus.*, 981 S.W.2d at 570 & n.5 (Mo. banc 1998) (quoting the *Kansas City Power & Light Co.* elements and noting, "[a]lthough *Sipco* is a use tax case, its analysis has been extended to sales tax.").

Stare decisis requires this Court to apply the *Kansas City Power & Light Co.* elements to the instant sales tax case. For several reasons, DI Supply is entitled to the resale tax exemption. First, DI Supply showed a "transfer" of the room furnishings. The principal opinion does not dispute that the room furnishings are transferred to the hotel customers, nor could it. The record shows hotel room customers expect, and understand they are paying for, certain amenities when renting a hotel room. Additionally, customers are granted the ability to exercise a certain amount of control over the room furnishings while they are in possession of the room. Therefore, there has been a "transfer" of the hotel room furnishings to the customer.

---

[3] Section 144.605(7) defines "sale" as:
> [A]ny transfer, barter or exchange of the title or ownership of tangible personal property, or the right to use, store or consume the same, for a consideration paid or to be paid, and any transaction whether called leases, rentals, bailments, loans, conditional sales or otherwise, and notwithstanding that the title or possession of the property or both is retained for security[.]

Second, DI Supply showed the right to use the room furnishings was transferred to the customer. In its decision, the AHC found "[Drury's] guests exercise varying degrees of control and use over the items in hotel rooms. ***Guests may use all the items in the hotel rooms as they were intended to be used***." (Emphasis added). While the AHC described the customer's use or control over the room furnishings as *de minimus*, DI Supply correctly points out this Court has found "use" in more fleeting situations. *See Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 179 S.W.3d 266, 269 (Mo. banc 2005) (Water park patrons used inner tubes even though they could not exercise complete control over them); *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 102 S.W.3d 526, 529-30 (Mo. banc 2003) (Temporary use of video game machine qualified as a "rental"); *Westwood Country Club v. Dir. of Revenue*, 6 S.W.3d 885, 889 (Mo. banc 1999) (Use of golf carts during a round of golf qualified as a "rental"). In most situations, a hotel customer uses room furnishings much more than a player uses a video game machine or a golfer uses a golf cart. Short of destroying or removing certain items, hotel customers have nearly complete control of the room furnishings throughout the length of their stay.

Third, there is no dispute DI Supply showed customers paid consideration for the transfer of the right to use the room furnishings because the cost of the room furnishings is factored into the overall rental cost of the hotel room. This Court has recognized factoring the cost of the individual items into the overall price of a hotel room satisfies the consideration element of the resale exemption. *See Kansas City Power & Light Co.*, 83 S.W.3d at 553 (holding customers give consideration for the use of electricity in hotel rooms because the cost is factored into the entire rental price of the room); *see also*

4

*Ronnoco Coffee*, 185 S.W.3d at 679 ("This Court has repeatedly held that where a business does not charge separately for goods transferred to customers but, rather, factors the cost of the goods into the price of all items sold to the customers, such goods are exempt from the use [or sales] tax.").

I concede that, without the benefit of this Court's prior opinions overruled by the principal opinion, it fairly reads the sales tax "sale at retail exception." But until today, the statutory construction by this Court of these same provisions and "sale at retail exemption" analysis based on that construction has never been questioned. But most importantly, it has never been questioned or altered by the General Assembly, which ultimately sets the tax policy of Missouri. Because the General Assembly is presumed to have knowledge of this Court's prior decisions interpreting and construing its statutes, it ratifies prior decisions of this Court when it does not abrogate them or take action to condemn them. *See State ex rel. Howard Elec. Co-op v. Riney*, 490 S.W.2d 1, 9 (Mo. 1973); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008) (Stare decisis has "special force" when statutory interpretation is implicated because the legislature has the ability to alter any decision of the courts.); *Square D Co. v. Niagara Frontier Tariff Bureau Inc.*, 476 U.S. 409, 424 (1986) ("Stare decisis is usually the wise policy because in most matters, it is more important that the applicable rule of law be settled than that it be settled right[.] This is commonly true, even where the error is a matter of serious concern, provided correction can be had by legislation." (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting))).

5

"[T]his Court should not lightly disturb its own precedent. Mere disagreement by the current Court with the statutory analysis of a predecessor Court *is not a satisfactory basis for violating* the doctrine of stare decisis, at least in the absence of a recurring injustice or absurd results." *Crabtree v. Bugby*, 967 S.W.2d 66, 71-72 (Mo. banc 1998) (emphasis added), *overruled on other grounds by Templemire v. W&M Welding, Inc.*, 433 S.W.3d 371, 373 (Mo. banc 2014). Recognizing that the Kansas City Chiefs are now world champions for the first time in 50 years, I am compelled to say the principal opinion moves the goalposts on DI Supply and all others who have relied on this Court's settled construction of the "sale at retail" exemption.

_____

Zel M. Fischer, Judge